## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BPS US Holdings Inc., *et al.*,[1] | Case No. 16-12373 (KJC) |
| Debtors. | (Joint Administration Requested) |

## INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. § 364, (II) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED CREDITORS PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364; (IV) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001; AND (V) GRANTING RELATED RELIEF

THIS MATTER having come before the Court upon the motion (the "**Motion**") by

PERFORMANCE SPORTS GROUP LTD., a British Columbia corporation (the "**Lead**

**Borrower**"), on behalf of itself and its affiliated debtors and debtors-in-possession (collectively

the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to

Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the

United States Code (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**") and Rules

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number or Canadian equivalent, are as follows: BPS US Holdings Inc. (8341); Bauer Hockey, Inc. (3094); Easton Baseball / Softball Inc. (5670); Bauer Hockey Retail Inc. (6663); Bauer Performance Sports Uniforms Inc. (1095); Performance Lacrosse Group Inc. (4200); BPS Diamond Sports Inc. (5909); PSG Innovation Inc. (9408); Performance Sports Group Ltd. (1514); KBAU Holdings Canada, Inc. (5751); Bauer Hockey Retail Corp. (1899); Easton Baseball / Softball Corp. (4068); PSG Innovation Corp. (2165); Bauer Hockey Corp. (4465); BPS Canada Intermediate Corp. (4633); BPS Diamond Sports Corp. (8049); Bauer Performance Sports Uniforms Corp. (2203); and Performance Lacrosse Group Corp. (1249). The Debtors' headquarters are located at 100 Domain Dr., Exeter, NH 03885.

2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

seeking entry of an interim order (this "**Interim Order**") and final order, *inter alia*:

(i)     authorizing, under Sections 364(c) and 364(d) of the Bankruptcy Code and

Bankruptcy Rule 4001(c), the Debtors to obtain secured, superpriority postpetition revolving

loans, advances and other financial accommodations (the "**ABL DIP Facility**"), on an interim

basis for a period through and including entry of the Final Order (as defined below), pursuant to

the terms and conditions of that certain Superpriority Debtor-In-Possession ABL Credit

Agreement (as amended, restated, supplemented or otherwise modified from time to time, the

"**ABL DIP Credit Agreement**"), substantially in the form of Exhibit E to the Motion, by and

among (a) the Lead Borrower, (b) the other Borrowers thereto from time to time,[2] (c) the

Guarantors thereto from time to time, if any, (d) Bank of America, N.A., as administrative agent

and collateral agent (in such capacities herein, the "**ABL DIP Agent**") for its own benefit and

the benefit of the other ABL DIP Lender Parties and (e) the Lenders from time to time party

thereto (the "**ABL DIP Lenders**" and each an "**ABL DIP Lender**"; the ABL DIP Agent and the

ABL DIP Lenders under the ABL DIP Loan Documents are collectively referred to herein as the

"**ABL DIP Lender Parties**"); and

(ii)    authorizing the Debtors to execute and deliver the ABL DIP Credit Agreement

and all other related documents and agreements, including security agreements, guaranties,

deposit account control agreements, pledge agreements, guaranties and promissory notes

(collectively, the "**ABL DIP Loan Documents**") and to perform such other acts as may be

necessary or desirable in connection with the ABL DIP Loan Documents; and

---

[2]     Capitalized terms used but not defined herein have the meanings given to them in the ABL DIP Loan
Documents or Term Loan DIP Documents (as defined below), as applicable.

(iii)    until the Interim Order Termination Date (as defined below) and subject to the terms, conditions, limitations on availability and reserves set forth in the ABL DIP Loan Documents, the ABL DIP Facility and this Interim Order, authorizing the Debtors, prior to the entry of the Final Order (as defined below), to request extensions of credit under the ABL DIP Facility up to an aggregate principal amount not to exceed $200,000,000[3] (consisting of revolving credit loans extended after the Petition Date and outstanding and new letters of credit) at any one time outstanding (the "**Interim Financing**");[4] and

(iv)    granting allowed superpriority administrative expense claim status pursuant to Section 364(c)(1) of the Bankruptcy Code in each of the Cases and any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**") to all obligations owing under the ABL DIP Credit Agreement and the other ABL DIP Loan Documents (collectively, and including all "Obligations" as described in the ABL DIP Credit Agreement, including all obligations with respect to letters of credit issued or deemed issued under the ABL DIP Credit Agreement, respectively, and, together, the "**ABL DIP Obligations**"), subject to the priorities set forth herein; and

(v)    authorizing the Debtors to use "Cash Collateral," as defined in Section 363(a) of the Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to Bankruptcy Code Sections 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

---

[3]    For the avoidance of doubt, such amount is exclusive of bank product obligations and other related obligations that are deemed outstanding under the ABL DIP Facility.

[4]    Notwithstanding anything to the contrary set forth in this Interim Order, effective upon the entry of this Interim Order, all Existing Letters of Credit and all bank product obligations existing under the Prepetition ABL Credit Agreement shall be deemed issued and continuing and part of the ABL DIP Obligations under the ABL DIP Credit Agreement, and thereafter shall cease to be Prepetition ABL Obligations.

(vi)    granting to the ABL DIP Agent, for the benefit of the ABL DIP Lender Parties, automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "Cash Collateral" as defined in Section 363(a) of the Bankruptcy Code, which liens shall be subject to the priorities set forth herein; and

(vii)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the ABL DIP Loan Documents as they become due, including, without limitation, continuing commitment fees, closing fees, administrative fees, any additional fees set forth in the ABL DIP Loan Documents, the reasonable fees and disbursements of the ABL DIP Lender Parties' attorneys, advisers, accountants and other consultants, and all related expenses of the ABL DIP Lender Parties, all to the extent provided by and in accordance with the terms of the respective ABL DIP Loan Documents and this Interim Order; and

(viii)    authorizing and directing the Debtors to apply the proceeds of any DIP Collateral (as defined herein) (other than net identifiable proceeds of any Fixed Asset Priority Collateral, as defined in the Prepetition Intercreditor Agreement and the Post-Petition Intercreditor Arrangements (each as defined below), the "**Fixed Asset Priority Collateral**") to reduce the Prepetition ABL Obligations in accordance with paragraph 18 of this Interim Order, subject to the rights of parties in interest described in paragraph 31 of this Interim Order; and

(ix)    authorizing, under Sections 364(c) and 364(d) of the Bankruptcy Code and Bankruptcy Rule 4001(c), the Debtors to execute and deliver that certain Term Loan Superpriority Debtor-In-Possession Credit Agreement (as amended, restated, supplemented or otherwise modified from time to time, the "**Term Loan DIP Credit Agreement**") by and among (a) the Lead Borrower, (b) the other Borrowers party thereto from time to time, (c) the

4

Guarantors party thereto from time to time, if any, (d) 9938982 Canada Inc., as administrative agent and collateral agent (in such capacities herein, the "**Term Loan DIP Agent**") for its own benefit and the benefit of the other Term Loan Lender Parties, and (e) the Lenders from time to time party thereto (the "**Term Loan DIP Lenders**" and each a "**Term Loan DIP Lender**" and, together with the ABL DIP Lenders, the "**DIP Lenders**"); the Term Loan DIP Agent and the Term Loan DIP Lenders are collectively referred to herein as the "**Term Loan DIP Lender Parties**" and, together with the ABL DIP Lender Parties, the "**DIP Lender Parties**"), substantially in the form of Exhibit F to the Motion, it being understood that no loans shall be requested by or made to the Debtors under the Term Loan DIP Credit Agreement prior to the entry of the Final Order, at which time the Debtors shall seek authority to obtain secured, super-priority postpetition term loans and other financial accommodations and to use the proceeds of the Term Loan DIP Facility to, among other things, repay in full in cash the Prepetition Term Loan Obligations, as defined below, and for working capital and other permitted purposes, upon entry of the Final Order (such facility, the "**Term Loan DIP Facility**" and, together with the ABL DIP Facility, the "**DIP Facilities**");

(x)        authorizing the Debtors to execute and deliver the Term Loan DIP Credit Agreement and all other related documents and agreements, including security agreements, deposit account control agreements, pledge agreements, mortgages, guaranties, promissory notes, and other customary documents, whether upon entry of this Interim Order or the Final Order, as applicable (collectively, the "**Term Loan DIP Loan Documents**" and together with the ABL DIP Loan Documents, the "**DIP Loan Documents**") and to, among other things, perform such other acts as may be necessary or desirable in connection with the Term Loan DIP Loan Documents; and

(xi)     authorizing and directing the Debtors to pay to the Term Loan DIP Lender Parties, upon entry of the Final Order, the commitment fees earned on the Petition Date and costs and expenses due to the Term Loan DIP Lender Parties pursuant to 12.01 of the Term Loan DIP Credit Agreement (the amounts and obligations set forth in this clause (xi), the "**Interim Term Loan DIP Obligations**" together with the ABL DIP Obligations, collectively, the "**DIP Obligations**"); and

(xii)    providing adequate protection to the Prepetition Secured Creditors (as defined herein) to the extent set forth herein; and

(xiii)   vacating and modifying the automatic stay imposed by Section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the respective terms and provisions of the DIP Loan Documents and this Interim Order; and

(xiv)    granting related relief; and

(xv)     scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion, the exhibits attached thereto, the DIP Loan Documents, the *Declaration of Brian J. Fox in Support of Debtors' Chapter 11 Petitions and First-Day Motions*, the *Declaration of Marc D. Puntus* in support of this Motion, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on the Motion (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Bankruptcy Rule 9013-1; and the Interim Hearing to consider the interim relief requested in the Motion having been held and concluded; and all objections, if any, to the interim relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court

6

that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSIONS OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[5]

A.      *Petition Date*.  On October 31, 2016 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**") commencing these Cases.

B.      *Canadian Proceeding*. On the Petition Date, each of the Debtors filed cases before the Ontario Superior Court (Commercial Division) under Canada's *Companies' Creditors Arrangement Act*, R.S.C. 1985 c. C-36 (the "**Canadian Proceeding**").

C.      *Debtors-in-Possession*.   The Debtors are continuing in the management and operation of their businesses and properties as debtors- in- possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

D.      *Jurisdiction and Venue*.   This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby. Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue

---

[5]      The findings and conclusions set forth herein constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.  To the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

for the Cases and proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The bases for the relief sought in the Motion and granted in this Interim Order are sections 105, 361, 362, 363, 364 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014, and Local Rule 4001-2.

E.    *Committee Formation*. As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not appointed any official committee of unsecured creditors in these Cases pursuant to Section 1102 of the Bankruptcy Code (a "**Committee**").

F.    *Debtors' Stipulations*. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 31 herein, the Debtors (on behalf of and for themselves) admit, stipulate, acknowledge and agree that (collectively, paragraphs F(i) through F(viii) below are referred to herein as the "**Debtors' Stipulations**"):

(i)    *Prepetition ABL Credit Documents*. As of the Petition Date, each of the Debtors (other than PSG Innovation Inc. and PSG Innovation Corp.) (collectively, the "**Prepetition Obligors**") were parties, as co-borrowers and co-guarantors, to that certain ABL Credit Agreement dated as of April 15, 2014 (as amended, modified and supplemented from time to time, the "**Prepetition ABL Credit Agreement**" and together with all related documents, guaranties and agreements, the "**Prepetition ABL Credit Documents**"), by and among (a) the Lead Borrower, as Parent, (b) the other Borrowers party thereto from time to time, (c) Bank of America, N.A., as administrative agent and collateral agent (in such capacities herein, the "**Prepetition ABL Agent**") for its own benefit and the benefit of the other "Lender Parties" (as defined therein), and (d) the Lenders from time to time party thereto (the "**Prepetition ABL Lenders**" and each a "**Prepetition ABL Lender**"; the Prepetition ABL Agent, the Prepetition

8

ABL Lenders and the other "Lender Parties" under the Prepetition ABL Credit Documents are collectively referred to herein as the "**Prepetition ABL Creditors**"), pursuant to which the Prepetition ABL Lenders made a $200 million asset-based secured credit facility available to the Prepetition Obligors. Pursuant to the terms and conditions of the Prepetition ABL Credit Documents, each of the Prepetition Obligors is jointly and severally liable for all of the Prepetition ABL Obligations (as defined below).

(ii) *Prepetition ABL Obligations.* As of the Petition Date, the aggregate outstanding principal amount owed by the Prepetition Obligors under the Prepetition ABL Credit Documents was not less than approximately $161 million, consisting of revolving credit loans in the outstanding approximate principal amount of $160 million and issued and outstanding letters of credit in the approximate amount of $1 million (collectively, together with any interest, fees, costs, bank product and swap obligations and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition ABL Credit Documents, and further including all "Obligations" as described in the Prepetition ABL Credit Agreement, and all interest, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "**Prepetition ABL Obligations**").

(iii) *Prepetition Term Loan Documents.* As of the Petition Date, the Prepetition Obligors were parties, as Borrower and co-guarantors, to that certain Term Loan Credit Agreement dated as of April 15, 2014 (as amended, modified and supplemented from time to time, the "**Prepetition Term Loan Agreement**" and together with all related documents, guaranties and agreements, the "**Prepetition Term Loan Documents**"), by and among (a) the Lead Borrower, as Borrower, (b) Bank of America, N.A., as administrative agent and collateral agent (in such capacity herein, the "**Prepetition Term Loan Agent**") for its own benefit and the

benefit of the other "Lender Parties" (as defined therein), and (c) the lenders from time to time party thereto (the "**Prepetition Term Loan Lenders**" and each a "**Prepetition Term Loan Lender**"; the Prepetition Term Loan Agent, the Prepetition Term Loan Lenders and the other "Lender Parties" under the Prepetition Term Loan Documents are collectively referred to herein as the "**Prepetition Term Loan Creditors**"), pursuant to which the Prepetition Term Loan Lenders made a $450 million secured term loan facility available to the Prepetition Obligors. Each of the Prepetition Obligors, other than the Lead Borrower, guaranteed the obligations of the Lead Borrower under the Prepetition Term Loan Documents. The Prepetition ABL Creditors and the Prepetition Term Loan Creditors are collectively referred to herein as the "**Prepetition Secured Creditors**" and the Prepetition ABL Credit Documents and the Prepetition Term Loan Documents are collectively referred to herein as the "**Prepetition Credit Documents**".

(iv)     *Prepetition Term Loan Obligations.*  As of the Petition Date, the aggregate outstanding principal amount owed by the Prepetition Obligors under the Prepetition Term Loan Documents was not less than $330,457,490 (together with all interest, premiums, if any, costs, fees and other charges or amounts accrued or payable prior to the Petition Date in accordance with the Prepetition Term Loan Documents, and further including all "Obligations" as described in the Prepetition Term Loan Agreement, and all interests, fees, costs and other charges allowable under Section 506(b) of the Bankruptcy Code, the "**Prepetition Term Loan Obligations**;" the Prepetition ABL Obligations and the Prepetition Term Loan Obligations are collectively referred to herein as the "**Prepetition Secured Obligations**").

(v)     *Prepetition Senior Liens and Prepetition Intercreditor Agreement.*  As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Prepetition Obligors granted security interests in and liens on substantially all of their personal

property, including, without limitation, accounts, inventory, equipment, investment property, trademarks, trade names, general intangibles and intellectual property (collectively, the "**Prepetition Collateral**"), to each of the Prepetition ABL Agent and the Prepetition Term Loan Agent (collectively, the "**Prepetition Senior Liens**") to secure repayment of the Prepetition Secured Obligations. Pursuant to that certain ABL/Term Prepetition Intercreditor Agreement dated as of April 15, 2014 (as amended and in effect, the "**Prepetition Intercreditor Agreement**"), by and between the Prepetition ABL Agent and the Prepetition Term Loan Agent and acknowledged and consented to by the Prepetition Obligors, the Prepetition ABL Agent and the Prepetition Term Loan Agent agreed to their respective rights and priorities with respect to the Prepetition Collateral. The Prepetition Intercreditor Agreement is a "subordination agreement" within the meaning of Section 510(a) of the Bankruptcy Code. The Prepetition Secured Creditors' interests in the Prepetition Collateral continue to be governed by the Prepetition Intercreditor Agreement (including, without limitation, (x) the Prepetition ABL Agent's senior rights with respect to the ABL Priority Collateral and junior rights in the Fixed Asset Priority Collateral and (y) the Prepetition Term Loan Agent's senior rights with respect to the Fixed Asset Priority Collateral and junior rights in the ABL Priority Collateral, in each case as such terms are defined in the Prepetition Intercreditor Agreement), except as otherwise expressly provided by this Interim Order.

(vi) *Validity, Perfection and Priority of Prepetition Senior Liens and Prepetition Secured Obligations.* The Debtors (without limiting the rights of other parties in interest under paragraph 31 of this Interim Order), and the Prepetition Secured Creditors acknowledge and agree that: (a) the Prepetition Senior Liens on substantially all of the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected,

(b) the Prepetition Senior Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to (i) the rights and priorities of the Prepetition ABL Agent and the Prepetition Term Loan Agent set forth in the Prepetition Intercreditor Agreement and (ii) certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Senior Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise with priority over the Prepetition Senior Liens on the Prepetition Collateral, provided that, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed or treated hereunder as a Prepetition Permitted Lien;[6] (c) the Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Obligors and constitute "allowed claims" within the meaning of section 502 of the Bankruptcy Code; (d) no offsets, challenges, objections, defenses, claims, impairment or counterclaims of any kind or nature to any of the Prepetition Senior Liens or the Prepetition Secured Obligations exist, and no portion of the Prepetition Senior Liens or the Prepetition Secured Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, recoupment, reductions, setoff or subordination (whether equitable, contractual or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of actions,

---

[6] For purposes of this Interim Order, Prepetition Permitted Liens shall include liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date. Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest, including, but not limited to, the Debtors, the ABL DIP Agent, the Term Loan DIP Agent, the Prepetition Term Loan Agent, and the Prepetition ABL Agent and the Committee, if any, to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

12

counterclaims, and/or choses in action, including, without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Secured Obligations exceeded the amount of those obligations, and accordingly the full amount of the Prepetition Secured Obligations are allowed secured claims within the meaning of Section 506 of the Bankruptcy Code, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, attorneys' fees and related expenses), costs and other charges, and further including the Prepetition ABL Escrow and the Prepetition Term Loan Escrow (each as defined herein).

(vii) *Cash Collateral.* The Debtors acknowledge and stipulate that all or substantially all of the Prepetition Obligors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(viii) *Release.* The Debtors (without limiting the rights of other parties in interest under paragraph 31 of this Interim Order) hereby forever, unconditionally and irrevocably release, discharge and acquit, as of the date of the Interim Order, the Prepetition ABL Agent, and the Prepetition Term Loan Agent, the ABL DIP Agent, the ABL DIP Lender Parties and each of the Prepetition Secured Creditors, and each of their respective successors, assigns, affiliates, subsidiaries, parents, officers, shareholders, directors, employees, attorneys and agents, past, present and future, and their respective heirs, predecessors, successors and assigns (collectively, the "**Releasees**") of and from any and all claims, controversies, disputes,

liabilities, obligations, demands, damages, expenses (including, without limitation, reasonable attorneys' fees), debts, liens, actions and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether or not known or matured, arising out of or relating to, as applicable, the ABL DIP Facility, the ABL DIP Loan Documents, the Prepetition Credit Documents, the Prepetition Senior Liens and/or the transactions contemplated hereunder or thereunder including, without limitation, (A) any so-called "lender liability" or equitable subordination claims or defenses, (B) any and all claims and causes of action arising under the Bankruptcy Code, and (C) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the DIP Liens (as defined herein), ABL DIP Obligations, Prepetition Credit Documents, Prepetition Secured Obligations or the Prepetition Senior Liens. Subject to paragraph 31, the Debtors further waive and release any defense, right of counterclaim, right of set-off or deduction to the payment of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Releasees, arising out of, connected with or relating to any and all acts, omissions or events occurring prior to the Bankruptcy Court entering this Interim Order and, if applicable, the Final Order.

      G.    *Findings Regarding the Postpetition Financing.*

      (i)    *Request for Postpetition Financing.* The Debtors seek authority to (a) enter into the ABL DIP Facility on the terms described herein and in the ABL DIP Loan Documents and to grant DIP Liens as of the date of the entry of the Interim Order on the DIP Collateral to secure the ABL DIP Obligations, (b) repay the Prepetition ABL Obligations as set forth herein, (c) enter into the Term Loan DIP Facility on the terms described herein and in the Term Loan DIP Documents, and (d) use Cash Collateral on the terms described herein to administer their Cases and fund their operations. At the Final Hearing, the Debtors will

14

seek final approval of the ABL DIP Facility and the Term Loan DIP Facility (including the authority to borrow under the Term Loan DIP Facility and repay in full in cash the Prepetition Term Loan Obligations) and use of Cash Collateral arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance reasonably acceptable to the ABL DIP Agent and the Required Lenders (as defined in the Prepetition Term Loan Credit Agreement, the "**Prepetition Term Loan Required Lenders**") and in form and substance acceptable to the Term Loan DIP Agent. Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Priming of the Prepetition Senior Liens.*  The priming of each of the Prepetition Senior Liens on the ABL Priority Collateral by the DIP Liens of the ABL DIP Agent thereon as set forth in this Interim Order will enable the Debtors to obtain the Interim Financing under the ABL DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.[7] Each Prepetition Secured Creditor has consented (or is deemed to have consented) on an interim basis to the terms and conditions of the ABL DIP Facility (including, without limitation, such priming liens on the ABL Priority Collateral under the terms and conditions set forth in this Interim Order and subject to (a) the rights of the Prepetition Term Loan Agent provided for in the Prepetition Intercreditor Agreement and (b) the priority waterfall described on **Exhibit A** hereto with respect to this Interim Order and the initial order to be entered in the Canadian Proceedings (the "*Priority Waterfall*") and is entitled to receive adequate protection of its interests therein as more fully described below, it being understood that the Prepetition Senior Liens of the Prepetition Term Loan Agent in the Fixed Asset Priority

---

[7] In the event of any inconsistency between the terms and conditions of the Prepetition Intercreditor Agreement or this Interim Order and the Priority Waterfall, the Priority Waterfall shall govern and control.

Collateral shall not be primed under this Interim Order by the DIP Term Loan Facility, the DIP ABL Facility or the Adequate Protection Liens of the Prepetition ABL Agent thereon.

(iii)    *Immediate Need for Interim Financing and Use of Cash Collateral.*  The Debtors' need to use Cash Collateral and to obtain the Interim Financing pursuant to the ABL DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships, pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the Interim Financing and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties in the ordinary course of business without the Interim Financing and authorized use of Cash Collateral.

(iv)    *No Credit Available on More Favorable Terms.*  Given their current financial condition, financing arrangements and capital structure, the Debtors were unable to obtain financing from sources other than the ABL DIP Lender Parties and the Term Loan DIP Lender Parties on terms more favorable than the respective terms of the ABL DIP Facility and the Term Loan DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in Sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c)

secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. The ABL DIP Facility is not otherwise available without granting the ABL DIP Agent upon entry of this Interim Order, for the benefit of the ABL DIP Lender Parties, (1) perfected security interests in and liens on (each as provided herein) all of the DIP Collateral (as defined herein) with the priorities set forth herein, (2) a superpriority claim and (3) the other protections set forth in this Interim Order. The Term Loan DIP Facility, which will not be available until entry of the Final Order, is not otherwise available without granting the Term Loan DIP Agent, upon entry of the Final Order, for the benefit of the Term Loan DIP Lender Parties, (1) perfected security interests in and liens on (each as provided herein) all of the DIP Collateral (as defined herein) with the priorities set forth herein as of the date of the Interim Order, (2) a superpriority claim and (3) the other protections contemplated under the Term Loan DIP Loan Documents.

(v)    *Use of Proceeds of the Interim Financing.* As a condition to entry into the ABL DIP Credit Agreement, the extensions of credit under the ABL DIP Facility and the authorization to use Cash Collateral, the ABL DIP Lender Parties require, and the Debtors have agreed, that proceeds of the Interim Financing to be provided pursuant to the ABL DIP Facility shall be used in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as **Exhibit B** hereto, as the same may be modified from time to time consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Budget**"), solely for (a) postpetition operating expenses and other working capital, (b) certain transaction fees and expenses, (c) permitted payment of costs of administration of the Cases, including professional fees, (d) adequate protection payments to the Prepetition Secured Creditors as set forth herein and payment of amounts due to the ABL DIP Lender Parties and the Term Loan DIP Parties,

(e) payments of amounts authorized to be paid under other "first" or "second" day orders in accordance with the Budget; and (f) as otherwise permitted under each of the Term Loan DIP Loan Documents and ABL DIP Loan Documents, as applicable. The repayment of the Prepetition ABL Obligations in accordance with this Interim Order and the ABL DIP Credit Agreement is a necessary condition of the Prepetition ABL Creditors consenting to the use of Cash Collateral and to the subordination of the Prepetition ABL Agent's liens to the DIP Liens as provided herein and in the Priority Waterfall.

(vi) *Application of Proceeds of DIP Collateral; Integrated Transaction.* As a condition to entry into the ABL DIP Loan Documents, the extension of credit under the ABL DIP Facility, and the authorization to use Cash Collateral, the Debtors and the ABL DIP Agent have agreed that the proceeds of DIP Collateral (other than net identifiable proceeds of Fixed Asset Priority Collateral, including collateral identified as Fixed Asset Priority Collateral in the Priority Waterfall) shall be applied toward the Prepetition ABL Obligations in accordance with paragraph 18 of this Interim Order. The extension of the ABL DIP Facility and the repayment of the Prepetition ABL Obligations are part of an integrated transaction. Such payments will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties in interest under paragraph 31 herein.

H. *Adequate Protection.* As a result of the grant of the DIP Liens, the use, sale or lease of property of the Debtors' estates authorized herein, including Cash Collateral, and the imposition of the automatic stay, the Prepetition Secured Creditors are entitled to receive adequate protection pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code and as set forth in paragraphs 12 and 13 of this Interim Order to the extent of any diminution in value of their interests in the Prepetition Collateral (collectively, to the extent of any such diminution in

value resulting from the grant of the DIP Liens, the use, sale or lease of property of the Debtors' estates authorized herein, including Cash Collateral, or the imposition of the automatic stay, the "**Diminution in Value**"). As adequate protection, the Prepetition Secured Creditors shall receive, among other things, (i) the Adequate Protection Liens (as defined herein) to secure the Prepetition Secured Obligations and Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Secured Obligations in accordance with the priorities set forth herein, and (ii) additional adequate protection in the form of payments of interest (including default interest), fees, costs, expenses (including reasonable attorneys' fees and expenses), indemnities and other amounts with respect to the Prepetition Secured Obligations in accordance with the Prepetition Credit Documents and as described herein.

I.    *Sections 506(c) and 552(b)*. In light of (i) the ABL DIP Agent's (and upon entry of the Final Order, the Term Loan DIP Agent's) agreement to subordinate their liens and superpriority claims, as applicable, to the Carve-Out (as defined herein); and (ii) each Prepetition Secured Creditor's agreement to subordinate the Adequate Protection Superpriority Claims and the Adequate Protection Liens to the Carve-Out, the DIP Liens, and the DIP Superpriority Claims (as defined below), in each case subject to the Priority Waterfall, the Prepetition Intercreditor Agreement and the Post-Petition Intercreditor Arrangements (as defined in the DIP Loan Documents), upon entry of the Final Order, each of the ABL DIP Lender Parties, the Term Loan DIP Lender Parties and each Prepetition Secured Creditor shall be entitled to the benefits of, and shall receive, a waiver of (a) the provisions of Section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under Section 552(b) of the Bankruptcy Code.

J.     *Good Faith of the DIP Lender Parties.*

(i)     *Willingness to Provide Interim Financing.*  Each of the ABL DIP Lender Parties has indicated a willingness to provide the Interim Financing to the Debtors subject to:  (a) the entry of this Interim Order and, following the period covered by the Interim Order, the Final Order; (b) approval of the terms and conditions of the ABL DIP Facility and the ABL DIP Loan Documents and the repayment of the Prepetition ABL Obligations to the extent set forth in this Interim Order; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that each of the ABL DIP Lender Parties is extending credit to the Debtors pursuant to the ABL DIP Loan Documents in good faith, and that each of the DIP Lender Parties' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the ABL DIP Loan Documents will have the protections provided in Section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

(ii)     *Business Judgment and Good Faith Pursuant to Section 364(e).*  Extension of the ABL DIP Facility and entry into the Term Loan DIP Facility, including the incurrence of the Interim Term Loan DIP Obligations and any ABL DIP Obligations, reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and consideration.  The ABL DIP Facility, the Term Loan DIP Facility, and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, the DIP Lender Parties, and the Prepetition Secured Creditors.  The use of Cash Collateral and the Interim Financing to be extended under the ABL DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good

20

faith, and for valid business purposes and uses, within the meaning of Section 364(e) of the Bankruptcy Code, and each of the ABL DIP Lender Parties and the Prepetition Secured Creditors is therefore entitled to the protection and benefits of Section 364(e) of the Bankruptcy Code and this Interim Order to the maximum extent set forth herein in such Section.

K.      *Notice*.  The Debtors have represented that they provided notice of the Interim Hearing and the emergency relief requested in the Motion, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: ((i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for the ABL DIP Agent; (iv) counsel for the Prepetition ABL Agent; (v) counsel for the Prepetition Term Loan Agent; (vi) counsel to certain Prepetition Term Loan Lenders constituting a majority thereof (the "**Majority Term Lenders**"); (vii) counsel to the Term Loan DIP Agent; (viii) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (ix) the monitor selected in the Canadian Proceedings (the "**Monitor**"); and (x) the United States Securities and Exchange Commission.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

L.      *Immediate Entry*.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(c)(2).

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      Interim Financing Approved. The Motion is granted on an interim basis, the Interim Financing is authorized and approved on an interim basis, and the use of Cash Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.      Objections Overruled. All objections to the Interim Financing, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.      Authorization of the DIP Financing and DIP Loan Documents.

(a)      The Debtors are expressly and immediately authorized and empowered (i) to execute and deliver the DIP Loan Documents, (ii) to incur and to perform the ABL DIP Obligations in accordance with, and subject to, the terms of this Interim Order, and the ABL DIP Loan Documents, (iii) to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the ABL DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order, as of the date of this Interim Order, and the applicable DIP Loan Documents, (iv) to repay the Prepetition ABL Obligations in accordance with paragraph 18 of this Interim Order, and (v) subject to the rights of third parties pursuant to paragraph 31 below, to pay and perform all obligations under the Prepetition Credit Documents in accordance with the terms set forth herein and therein, including to provide for (x) the releases in favor of each of the Prepetition Secured Creditors and their related parties and (y) subject to the entry of the Final Order, to pay in full in cash the Prepetition Term Loan Obligations. The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the ABL DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, commitment fees, closing fees, administrative fees, any additional fees set forth in the ABL DIP Loan Documents,

22

and the reasonable fees and disbursements of the ABL DIP Lender Parties' attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the ABL DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below. All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the ABL DIP Loan Documents. Upon execution and delivery, the ABL DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

(b)     The Debtors are expressly and immediately authorized and empowered to execute and deliver the Term Loan DIP Loan Documents, provided that until entry of the Final Order no liens or claims will be granted hereunder or under the Term Loan DIP Loan Documents and no loans shall be requested by or made to the Debtors under the Term Loan DIP Credit Agreement, in each case, prior to the entry of the Final Order. Subject to entry of the Final Order, the Debtors are hereby authorized to pay the Interim Term Loan DIP Obligations as such become due, including, without limitation, the reasonable fees and disbursements of the Term Loan DIP Lender Parties' attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the Term Loan DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below.

4.     Authorization to Borrow. Subject to the terms, conditions, limitations on availability and reserves set forth in the ABL DIP Loan Documents and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are

hereby authorized to request extensions of credit under the ABL DIP Facility up to an aggregate principal amount of $200,000,000 (consisting of revolving credit loans and new and outstanding letters of credit) at any one time outstanding. The Debtors authorization hereunder to borrow under the DIP ABL Facility shall continue until the Interim Order Termination Date (as defined below) (other than, for the avoidance of doubt, to fund the Carve-Out as provided in the DIP ABL Facility).

5. ABL DIP Obligations. The ABL DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' ABL DIP Obligations, which ABL DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee, other estate representative or liquidating or creditor trust appointed in any Successor Cases. Upon entry of this Interim Order, the ABL DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to any of the ABL DIP Lender Parties under the ABL DIP Loan Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the ABL DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

6. Postpetition Liens and Collateral.

(a) Effective immediately upon the entry of this Interim Order, pursuant to Sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the ABL DIP Agent (for the benefit of itself and the other ABL DIP Lender Parties under the ABL DIP Loan Documents) is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**DIP Liens**")

any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, all Collateral (as defined the ABL DIP Loan Documents) (but excluding any "Excluded Property" as defined in the ABL DIP Loan Documents) (the "**DIP Collateral**"), in each case in accordance with the "Grant of Security" provisions of the ABL DIP Loan Documents; provided that the grant of security in the proceeds of Avoidance Actions shall be subject to entry of the Final Order.

(b)     Effective upon the entry of the Interim Order, all DIP Liens of the ABL DIP Agent shall be and remain at all times senior to the Prepetition Senior Liens on the ABL Priority Collateral but junior to the Prepetition Senior Liens of the Prepetition Term Loan Agent in the Fixed Asset Priority Collateral, including collateral identified as Fixed Asset Priority Collateral in the Priority Waterfall, in accordance with the Prepetition Intercreditor Agreement and the Priority Waterfall.[8] The DIP Liens are and shall be subject to the terms and conditions of the Prepetition Intercreditor Agreement for so long as any Prepetition Secured Obligations remain outstanding and, except as expressly set forth in this Interim Order, nothing in this Interim Order shall be deemed to impair or otherwise modify the rights of the Prepetition ABL Agent, on the one hand, and the Prepetition Term Loan Agent, on the other, under any such agreements or documents as in effect prior to the date hereof. For the avoidance of doubt, as concerns the application or interpretation of the Prepetition Intercreditor Agreement, (i) the Prepetition Intercreditor Agreement shall apply to the ABL DIP Credit Agreement (including, without limitation, to the ABL DIP Agent, ABL DIP Lenders and ABL DIP Obligations thereunder), on the one hand, and the Prepetition Term Loan Agreement and the Prepetition Term Loan Obligations, on the other, and the transactions contemplated by this Interim Order

---

[8]     For the purposes of this Interim Order, any DIP Collateral unencumbered by the Prepetition Senior Liens shall be treated as Fixed Asset Priority Collateral to the extent the collateral is in the character of Fixed Asset Priority Collateral, otherwise it will be treated as ABL Priority Collateral.

shall constitute a "DIP Financing" (as defined in the Prepetition Intercreditor Agreement); and (ii) until payment in full in cash of the Prepetition Term Loan Obligations, the Prepetition Intercreditor Agreement shall remain valid and effective.

7.     DIP Lien Priority.

(a)     *DIP Liens*. The DIP Liens shall be junior to the (i) Carve-Out and (ii) the Prepetition Permitted Liens, and shall otherwise have the priority set forth in the Priority Waterfall. Other than as set forth herein, the DIP Liens shall not be made subject to or be *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases or any claim for reclamation or return (whether asserted pursuant to Section 546(c) of the Bankruptcy Code or otherwise), except as otherwise expressly permitted under the DIP Loan Documents. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to challenge under Sections 510, 546, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estate pursuant to Section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(b)     *Prepetition Senior Liens*. For the avoidance of doubt, the Prepetition Senior Liens shall have the priority set forth in the Priority Waterfall.

8.     DIP Superpriority Claims.

(a)     *DIP Superpriority Claim.* Upon entry of this Interim Order, the ABL DIP Agent (for the benefit of itself and the other ABL DIP Lender Parties under the ABL DIP Loan Documents) is hereby granted, pursuant to Section 364(c)(1) of the Bankruptcy Code, an allowed

superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all ABL DIP Obligations.

(b) *Priority of DIP Superpriority Claim.* The DIP Superpriority Claim shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject to the priorities set forth herein. The DIP Superpriority Claim shall be subordinate to the Carve-Out and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to Sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (upon entry of the Final Order), 507(a), 507(b),[9] 546(c), 546(d), 726 and 1114 of the Bankruptcy Code. Without limiting the foregoing, subject to entry of the Final Order, the DIP Superpriority Claim shall be payable from the proceeds of Avoidance Actions (other than actions brought under section 549 of the Bankruptcy Code, which shall be approved upon entry of this Interim Order).

9. No Obligation to Extend Credit. No ABL DIP Credit Party shall have any obligation to make any loan or advance under the ABL DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable ABL DIP Loan Documents and this Interim Order have been satisfied in full or waived by the ABL DIP Agent, in its sole discretion.

10. Use of ABL DIP Facility Proceeds. From and after the Petition Date, the Debtors shall use advances of credit under the ABL DIP Facility only for the purposes specifically set forth in this Interim Order and the ABL DIP Loan Documents, and in compliance with the Budget as provided in the ABL DIP Loan Documents (subject to permitted variances), a copy of which has been delivered to the ABL DIP Agent, the Term Loan DIP Agent, the Prepetition

---

[9] Other than section 507(b) claims of the Prepetition Term Lenders as set forth in the Priority Waterfall.

ABL Agent and the Prepetition Term Loan Agent and is attached hereto as Exhibit B, as the same may amended or updated in accordance with the DIP Loan Documents.

**Authorization to Use Cash Collateral**

11.     Authorization to Use Cash Collateral. So long as this Interim Order has not been superseded and replaced by the Final Order, subject to the terms and conditions of this Interim Order and the ABL DIP Loan Documents, and in accordance with the Budget as provided in the ABL DIP Loan Documents, the Debtors are authorized under this Interim Order to use Cash Collateral until the earlier of (i) receipt of a Termination Declaration and (ii) the Cash Collateral Termination Date (as defined in paragraph 22 below) (such date, the "**Interim Order Termination Date**"); provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral solely to meet payroll (other than severance), to pay expenses critical to the preservation of the Debtors and their estates as agreed by the ABL DIP Agent in its reasonable discretion, in each case in accordance with the terms and provisions of the Budget (subject to permitted variances), and to pay amounts covered by (or to fund a reserve to pay) the Carve-Out. Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order and the ABL DIP Loan Documents and in accordance with the Budget as provided in the ABL DIP Loan Documents.

**Adequate Protection Provisions**

12.     Adequate Protection Liens; Adequate Protection Payments; Access to Records.
Subject in all respects to the Carve-Out, the Prepetition Intercreditor Agreement, the Priority
Waterfall and the priorities set forth therein, as adequate protection for any Diminution in Value
of the Prepetition Collateral (including Cash Collateral), the Prepetition Secured Creditors shall
receive adequate protection as follows:

(a)     *Creation of Adequate Protection Liens*.  To the extent of any Diminution
in Value, each of the Prepetition ABL Agent (for the benefit of itself and the other Prepetition
ABL Creditors) and the Prepetition Term Loan Agent (for the benefit of itself and the other
Prepetition Term Loan Creditors) is hereby granted, pursuant to Sections 361, 363 and 364(d) of
the Bankruptcy Code, valid and perfected replacement and additional security interests in, and
liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral (the
"**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition ABL
Agent shall secure the Prepetition ABL Obligations and the Adequate Protection Liens granted
to the Prepetition Term Loan Agent shall secure the Prepetition Term Loan Obligations (and in
each case shall be subject to the relative priorities of the Prepetition Senior Liens of the
Prepetition ABL Agent and the Prepetition Term Loan Agent set forth in the Prepetition
Intercreditor Agreement and shall be subject to the Priority Waterfall).  The Adequate Protection
Liens (x) are and shall be valid, binding enforceable and fully perfected as of the date hereof, (y)
subordinate and subject to, and in accordance with the Priority Waterfall, (i) the DIP Liens
(solely to the extent provided in the Priority Waterfall), (ii) the Permitted Prior Liens and (iii) the
Carve-Out, and (z) in all instances, are subject to the Prepetition Intercreditor Agreement and the
relative priorities of the Prepetition Senior Liens of the Prepetition ABL Agent and the

Prepetition Term Loan Agent as set forth therein. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases.

(b) *Adequate Protection Payments.* The Prepetition Secured Creditors shall receive additional adequate protection in the form of the following:

(i) in the case of the Prepetition ABL Creditors, (A) subject to the notice and objection provisions set forth in paragraph 26 herein, the current payment of the reasonable and documented out-of-pocket costs, fees and expenses of the financial advisors and attorneys of the Prepetition ABL Agent, (B) until the Prepetition ABL Obligations have been paid in full, the payment of all accrued and unpaid interest at the "Default Rate" as provided in the Prepetition ABL Credit Agreement, (C) payment of the Prepetition ABL Obligations from the proceeds of DIP Collateral as set forth in paragraph 18 below, and (D) upon the entry of the Final Order and subject to the terms thereof, payment to the Prepetition ABL Agent, of $250,000 in escrow to secure contingent indemnification obligations arising under or related to the Prepetition ABL Credit Documents (the "**Prepetition ABL Escrow**"), ; and

(ii) in the case of the Prepetition Term Loan Creditors, (A) subject to the notice and objection provisions set forth in paragraph 26 herein, the current payment of the reasonable and documented out-of-pocket costs, fees and expenses of counsel for the Prepetition Term Loan Agent and the following financial advisors and attorneys of the Majority Term Lenders: Weil, Gotshal & Manges LLP, Goodmans LLP, FTI Consulting, Inc., and Morris, Nichols, Arsht & Tunnel LLP, (B) until the Prepetition Term Loan Obligations have been paid in

full, payment of all accrued and unpaid interest at the "Default Rate" as provided in the Prepetition Term Loan Agreement; and (C) upon entry of the Final Order, payment to the Prepetition Term Loan Agent, for the benefit of the Prepetition Term Loan Creditors, of $250,000 in escrow to secure contingent indemnification obligations arising under or related to the Prepetition Term Loan Credit Documents (the "**Prepetition Term Loan Escrow**"), provided that notwithstanding anything to the contrary contained in this Interim Order or the Prepetition Intercreditor Agreement, following any Prepetition Term Loan Creditor's receipt of any adequate protection payments described in this clause (ii), all proceeds of Fixed Asset Priority Collateral thereafter received shall be applied first to repay the Prepetition ABL Obligations or the ABL DIP Obligations, as applicable, until the amount of such proceeds of Fixed Asset Priority Collateral so applied to the Prepetition ABL Obligations and the ABL DIP Obligations, in the aggregate, is equal to the amount of any adequate protection payments described in this clause (ii) that have been received by the Prepetition Term Loan Creditors and funded with ABL Priority Collateral (as defined in the Prepetition Intercreditor Agreement) or the proceeds thereof or with advances under the ABL DIP Facility or the proceeds thereof (it being understood that the Prepetition ABL Creditors and the ABL DIP Lender Parties shall not receive any such reimbursement payments to the extent that the Prepetition Term Loan Creditors receive adequate protection payments under this clause (ii) from the proceeds of the Fixed Asset Priority Collateral, including collateral identified as Fixed Asset Priority Collateral in the Priority Waterfall).

(c)     *Access to Records.* In addition to, and without limiting, whatever rights to access the Prepetition Secured Creditors have under their respective Prepetition Credit Documents, upon reasonable notice, at reasonable times during normal business hours, the

Debtors shall permit representatives, agents and employees of the Prepetition Secured Creditors (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, (iii) to discuss the Debtors' affairs, finances and condition with the Debtors' officers and financial advisors, and (iv) otherwise have full cooperation of the Debtors in accordance with the terms of the Prepetition Credit Documents. Without limiting the foregoing, the Debtors shall provide copies to each Prepetition ABL Agent and the Prepetition Term Loan Agent of any documents, notices or other materials provided to any DIP Credit Party simultaneously with the delivery of such documents, notices or materials to such DIP Credit Party.

13. Adequate Protection Superpriority Claims.

(a) *Superpriority Claims of Prepetition ABL Agent and Prepetition Term Loan Agent.* As further adequate protection of the interests of (i) the Prepetition ABL Agent and the other Prepetition ABL Creditors with respect to the Prepetition ABL Obligations and (ii) the Prepetition Term Loan Agent and the other Prepetition Term Loan Creditors with respect to the Prepetition Term Loan Obligations, each of the Prepetition ABL Agent (for the benefit of itself and the other Prepetition ABL Creditors) and the Prepetition Term Loan Agent (for the benefit of itself and the other Prepetition Term Loan Creditors) is hereby granted, to the maximum extent set forth in Section 507(b) of the Bankruptcy Code, an allowed administrative claim against the Debtors' estates under Sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any Diminution in Value of the Prepetition ABL Agent's and the Prepetition Term Loan Agent's respective interests in the Prepetition Collateral.

(b) *Priority of Adequate Protection Superpriority Claims.* The Adequate Protection Superpriority Claims granted to each of the Prepetition ABL Agent and the

Prepetition Term Loan Agent shall be junior and subordinate to the Carve-Out, the DIP Superpriority Claims and the Adequate Protection Liens to the extent set forth in the Priority Waterfall, and subject in all respects to the Prepetition Intercreditor Agreement, and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b), 546 and 507(b) of the Bankruptcy Code.[10]

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.     Amendments.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if:  (i) in the reasonable judgment of the Debtors and the ABL DIP Agent and/or the Term Loan DIP Agent, as applicable, the amendment, modification, or supplement (A) is in accordance with the relevant DIP Loan Documents, (B) is not prejudicial in any material respect to the rights of third parties, and (C) has been consented to by the ABL DIP Agent and/or the Term Loan DIP Agent, as applicable, and (ii) a copy (which may be provided through electronic mail or facsimile) of the form of amendment, modification or supplement is provided to counsel for the Committee, if any, the Prepetition ABL Agent, the ABL DIP Agent, Term Loan DIP Agent, the Prepetition Term Loan Agent and the U.S. Trustee at least three (3) Business Days prior to the effective date of the amendment, modification or supplement.  The Debtors will file all material amendments, modifications and supplements with the Court at least three (3) Business Days prior to the effective date of the same.  Notwithstanding the foregoing, if the Term Loan DIP Loan Documents are modified such that the Prepetition Term Loan Obligations will not be paid in full in cash upon entry of the Final Order, then the consent of the Majority Term Lenders and the

---

[10]     Notwithstanding anything to the contrary set forth in this Interim Order and for the avoidance of doubt, none of the Adequate Protection Liens shall extend to any of the Excluded Property (as defined in the ABL DIP Loan Documents), and any lien on the proceeds of Avoidance Actions shall be subject to entry of the Final Order (other than Avoidance Actions under section 549 of the Bankruptcy Code, which shall be effective upon entry of the Interim Order).

*↓ Prepetition ABL Agent,*

Prepetition Term Loan Agent to the use of Cash Collateral hereunder may be withdrawn, and the rights and remedies of the Prepetition Term Loan Lenders and the Prepetition Term Loan Agent with respect thereto are fully reserved, subject in all respects to the Prepetition Intercreditor Agreement and the Priority Waterfall.

15.     Budget Maintenance.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to  ABL DIP Agent, and approved by the ABL DIP Agent in its Permitted Discretion.  Copies of any updated Budgets shall be provided to the U.S. Trustee and counsel for the Committee.  The Debtors shall comply with and update the Budget from time to time in accordance with the ABL DIP Loan Documents (provided that any update shall be in form and substance reasonably acceptable to the ABL DIP Agent in its Permitted Discretion).

16.     Modification of Automatic Stay.  The automatic stay imposed under Section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claims and the Adequate Protection Superpriority Claims; and (b) authorize the Debtors to pay, and the ABL DIP Lender Parties and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of this Interim Order.

17.     Perfection of DIP Liens and Adequate Protection Liens.

(a)     *Automatic Perfection of Liens*.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be

required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the ABL DIP Lender Parties or the Prepetition Secured Creditors to the priorities granted herein. Notwithstanding the foregoing, the ABL DIP Agent is authorized to file, in its Permitted Discretion as it may deem necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens or the Adequate Protection Liens. The Debtors are authorized to execute and deliver promptly upon demand to the ABL DIP Agent all such financing statements, mortgages, control agreements, notices and other documents as the ABL DIP Agent may reasonably request. The ABL DIP Agent, in its Permitted Discretion (as defined in the DIP ABL Credit Agreement), may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.     Repayment of Prepetition ABL Obligations.

(a)     Prior to the occurrence of the Interim Order Termination Date, the proceeds of DIP Collateral (other than net identifiable proceeds of the Fixed Asset Priority Collateral, including collateral identified as Fixed Asset Priority Collateral in the Priority

Waterfall) received by the ABL DIP Agent, including such funds transferred and credited to the "Concentration Account" maintained at Bank of America, N.A. shall be applied as follows: *first*, to payment of the Prepetition ABL Obligations in accordance with the terms of the Prepetition ABL Credit Documents, *second*, to payment of fees, costs and expenses, payable and reimbursable by the Debtors under the ABL DIP Credit Agreement and the other ABL DIP Loan Documents; *third*, to payment of all ABL DIP Obligations in accordance with the ABL DIP Loan Documents; *fourth*, to cash collateralize Letters of Credit in accordance with the ABL DIP Loan Documents; *fifth* to the payment of the Prepetition Term Loan Obligations in accordance with the Prepetition Term Loan Documents; and *sixth* upon Payment in Full of the Prepetition ABL Obligations and the ABL DIP Obligations, to the Debtors' operating account, or for the account of and paid to whoever may be lawfully entitled thereto.

(b)     Notwithstanding the foregoing provisions of paragraph 18(a) of this Interim Order or Article 4 of the Prepetition Intercreditor Agreement, and subject to paragraph 12(b)(ii) of this Interim Order, the Debtors shall segregate proceeds of Fixed Asset Priority Collateral, including collateral identified as Fixed Asset Priority Collateral in the Priority Waterfall, and upon the receipt of any net identifiable proceeds thereof, pay over such proceeds to the Prepetition Term Loan Agent for application to the Prepetition Term Loan Obligations.

(c)     As among the ABL DIP Agent, the ABL DIP Lenders, the other ABL DIP Lender Parties and the Prepetition ABL Creditors, nothing provided herein shall be deemed to modify the allocation of the proceeds of DIP Collateral set forth in the Prepetition ABL Credit Documents and ABL DIP Loan Documents.

(d)     The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, or prepay any principal, premium, if any, interest or other amount payable in respect of

any indebtedness prior to its scheduled maturity, other than the ABL DIP Obligations, the Prepetition ABL Obligations and, with the net identifiable proceeds of Fixed Asset Priority Collateral, including collateral identified as Fixed Asset Priority Collateral in the Priority Waterfall, the Prepetition Term Loan Obligations (each in accordance with the ABL DIP Loan Documents and this Interim Order), the Interim Term Loan DIP Obligations and obligations authorized to be paid under the ABL DIP Loan Documents by an order of the Court, including pursuant to the Budget.

19. Proceeds of Subsequent Financing. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to Sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the ABL DIP Loan Documents at any time prior to the payment in full of all Prepetition ABL Obligations and all ABL DIP Obligations, all Interim Term Loan DIP Obligations and the termination of the ABL DIP Lender Parties' obligations to extend credit under the ABL DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the ABL DIP Agent or the Prepetition Term Loan Agent, as applicable, to be applied as set forth in paragraph 18 herein.

20. Maintenance of DIP Collateral. Until the payment in full of all Prepetition ABL Obligations and all ABL DIP Obligations, and the termination of the ABL DIP Lender Parties' obligations to extend credit under the ABL DIP Loan Documents, as provided therein, the Debtors shall (a) insure the DIP Collateral as required under the ABL DIP Facility, and (b)

maintain the cash management system which has been agreed to by the ABL DIP Agent or as otherwise required by the ABL DIP Loan Documents.

21.  Disposition of DIP Collateral.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the ABL DIP Loan Documents.  Nothing provided herein shall limit the right of any ABL DIP Credit Party or any Prepetition Secured Creditor to object to any proposed disposition of the DIP Collateral.

22.  Termination Date.  On the Interim Order Termination Date, (i) all ABL DIP Obligations shall be immediately due and payable, (ii) all commitments to extend credit under the ABL DIP Facility will terminate (other than, for the avoidance of doubt, to fund the Carve-Out as provided under the ABL DIP Credit Agreement) and (iii) all authority to use Cash Collateral hereunder shall cease, provided, however, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein. As used in this Interim Order, "**Cash Collateral Termination Date**" shall mean (a) the date that is 40 days following entry of the Interim Order if the Prepetition Term Loan Obligations have not been repaid in full in cash, (b) the failure of the Debtors to make any adequate protection payment as an when required by the terms of this Interim Order, (c) the date that is 40 days following entry of this Interim Order if a Final Order acceptable to the Term Loan DIP Agent and reasonably acceptable to the Debtors, the ABL DIP Agent, the Prepetition ABL Agent, the Prepetition Term Loan Agent and the Prepetition Term Loan Required Lenders has not been entered or (d) the dismissal of any of the Cases, the conversion of any Case to a case under chapter 7 of the Bankruptcy Code, or the appointment of a chapter 11 trustee with expanded

powers in any of the Cases; provided, however, that during the Remedies Notice Period, the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23. Events of Default. The occurrence of an "Event of Default" under the ABL DIP Credit Agreement shall constitute an event of default under this Interim Order (each, an "**Event of Default**").

24. Rights and Remedies Upon Event of Default.

(a) *ABL DIP Facility Termination.* Immediately upon the occurrence and during the continuance of an Event of Default, the ABL DIP Agent may in its discretion (or shall in accordance with the DIP Loan Documents) (i) declare the ABL DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) with respect to the ABL DIP Facility send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the ABL DIP Facility will be made in the sole discretion of the ABL DIP Agent and/or the ABL DIP Lenders. Upon the issuance of a Termination Declaration to the Debtors in accordance with the ABL DIP Credit Agreement: (I) all or any portion of the Commitments of the relevant DIP Lender Parties to make loans or otherwise extend credit may be suspended or terminated in accordance with the applicable DIP Loan Documents (other than, for the avoidance of doubt, to fund the Carve-Out under the ABL DIP Credit Agreement); (II) all ABL DIP Obligations may be deemed immediately due and payable in accordance with the ABL DIP Loan Documents (other than, for the avoidance of doubt, to fund the Carve-Out under the ABL DIP Credit Agreement); (III) after the expiration of the Remedies Notice Period, and unless the Court orders otherwise prior to the expiration thereof, the ABL DIP Agent and the ABL DIP Lenders may exercise all other rights and remedies available to them under the ABL DIP Credit Agreement (subject to the Priority Waterfall, the Prepetition Intercreditor Agreement, and, upon

its effectiveness, the Post-Petition Intercreditor Arrangements); and (IV) after expiration of the Remedies Notice Period, and unless the Court orders otherwise prior to the expiration thereof, any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the ABL DIP Agent, provided that, during the Remedies Notice Period, the Debtors may use Cash Collateral solely to meet payroll (other than severance), to pay expenses critical to the preservation of the Debtors and their estates as agreed by the ABL DIP Agent in its reasonable discretion, and to pay (or fund a reserve for) amounts covered by the Carve-Out, in each case in accordance with the terms and provisions of the Budget. With respect to the DIP Collateral, after expiration of the Remedies Notice Period, and unless the Court orders otherwise prior to the expiration thereof, the ABL DIP Lender Parties may exercise all rights and remedies available to them under the ABL DIP Loan Documents or applicable law against the DIP Collateral (subject to the Priority Waterfall, the Prepetition Intercreditor Agreement and, upon its effectiveness, the Post-Petition Intercreditor Arrangements) including: (i) entering onto the premises of any Debtor in connection with an orderly liquidation of the DIP Collateral, and/or (ii) exercising any rights and remedies provided under the ABL DIP Loan Documents, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Interim Order and, if applicable, the Final Order. For the avoidance of doubt, no party-in-interest (other than the ABL DIP Lender Parties) may at any time exercise any rights and remedies available to them against the DIP Collateral that is ABL Priority Collateral until the ABL DIP Obligations and the Prepetition ABL Obligations, in each case, other than contingent indemnification obligations for which a claim has not been asserted, are paid in full in cash. After the expiration of the Remedies Notice Period, and unless the Court orders otherwise prior to the expiration thereof, the ABL DIP Agent may require the Debtors to seek authority from the

Court to retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of the DIP Collateral and, if the Debtors refuse to seek such authority, the ABL DIP Agent shall be entitled to seek such authority directly from the Court.

(b)     *Notice of Termination.*  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtors, counsel to the Prepetition ABL Agent, counsel to the Prepetition Term Loan Agent, counsel to the Term Loan DIP Agent or the ABL DIP Agent, as applicable, counsel to the Prepetition Required Term Lenders, counsel to the Committee, if any, the Monitor and the U.S. Trustee (the first Business Day any such Termination Declaration has been delivered to all of the foregoing parties, the "**Termination Declaration Date**").  The ABL DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraphs 11 and 24 of this Interim Order.  The automatic stay otherwise applicable to the ABL DIP Lender Parties is hereby modified so that five (5) Business Days after the Termination Declaration Date (the "**Remedies Notice Period**"), unless the Court orders otherwise prior to the expiration thereof, subject to the Prepetition Intercreditor Agreement, the Priority Waterfall and, upon its effectiveness, the Post-Petition Intercreditor Arrangements, the ABL DIP Lender Parties shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the ABL DIP Loan Documents or the Prepetition ABL Credit Documents, as applicable, and this Interim Order, and shall be permitted to satisfy the DIP Liens, the Prepetition Senior Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, subject only to the Carve-Out and Prepetition Permitted Liens and in accordance with the priorities set forth

in the Priority Waterfall, and nothing herein shall preclude the Prepetition Term Loan Agent from seeking to exercise remedies with respect to the Fixed Asset Priority Collateral (subject to the Prepetition Intercreditor Agreement and the Priority Waterfall), and all parties in interests rights with respect thereto are fully preserved. During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether an Event of Default, Cash Collateral Termination Event or Interim Order Termination Date, as applicable, has occurred. Unless the Court determines during the Remedies Notice Period that an Event of Default, Cash Collateral Termination Event or Interim Order Termination Date, as applicable, has not occurred or otherwise orders that the automatic stay shall not be terminated, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the ABL DIP Lender Parties shall be permitted to exercise all remedies set forth herein, in the ABL DIP Credit Agreement and ABL DIP Loan Documents, and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 105 or 362 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the ABL DIP Agent with respect thereto pursuant to the ABL DIP Credit Agreement, the other ABL DIP Loan Documents or this Interim Order.

(c)     *Access to Leased Premises.*   The ABL DIP Agent's exercise of its remedies pursuant to this paragraph 24 shall be subject to: (w) any agreement in writing between the ABL DIP Agent or Prepetition ABL Agent and any applicable landlord, (x) pre-existing rights of the ABL DIP Agent and any applicable landlord under applicable non-bankruptcy law,

(y) consent of the applicable landlord, or (z) further order of the Court following notice and a hearing.

25.     Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this Interim Order. The ABL DIP Lender Parties and the Prepetition Secured Creditors have acted in good faith in connection with this Interim Order and their reliance on this Interim Order is in good faith. Based on the findings set forth in this Interim Order and the record made during the Interim Hearing, and in accordance with Section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court, or any other court, the ABL DIP Lender Parties and the Prepetition ABL Creditors are entitled to the protections provided in Section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment or vacatur shall not affect the validity and enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized or created hereby, provided that with respect to the ABL DIP Lender Parties the Interim Order was not stayed by court order after due notice had been given to the ABL DIP Agent at the time the advances were made or the liens, claims or priorities were authorized and/or created. Any liens or claims granted to the ABL DIP Lender Parties hereunder arising prior to the effective date of any such reversal, modification, amendment or vacatur of this Interim Order shall be governed in all respects by the original provisions of this Interim Order, including entitlement to all rights, remedies, privileges and benefits granted herein, provided that with respect to the ABL DIP Lender Parties, the Interim Order was not stayed by court order after due notice had been given to the ABL DIP Agent at the time the advances were made or the liens, claims or priorities were authorized and/or created.

43

26. <u>DIP and Other Expenses</u>. The Debtors are authorized and directed to pay reasonable and documented out-of-pocket expenses (and the Prepetition ABL Agent, the Prepetition Term Loan Agent or the ABL DIP Agent, as applicable, are authorized to make advances or charges against the applicable loan account to pay such expenses) of (i) the ABL DIP Lender Parties in connection with the ABL DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the ABL DIP Loan Documents and (ii) the Prepetition Agents and the Prepetition Required Term Lenders (including, without limitation, expenses incurred prior to the Petition Date) as provided in the Prepetition Credit Documents, including, without limitation, reasonable legal, financial advisory, accounting, collateral examination, monitoring and appraisal fees, and indemnification and reimbursement of fees and expenses, upon the Debtors' receipt of invoices for the payment thereof, after the expiration of the 10-day review period set forth in this paragraph. Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the ABL DIP Lender Parties, the Prepetition Agents, and the Prepetition Required Term Lenders shall not be required to comply with any particular format. The professionals for the ABL DIP Lender Parties and the Prepetition Agents shall deliver a copy of their respective invoices to counsel for the Committee, if any, and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtors, the U.S. Trustee or the Committee, if any, with respect to such invoices within ten (10) days of the receipt thereof will be subject to resolution by the Court. In the event of any objection, the provisions of Section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.

27.  Indemnification.

(a)  *Generally.*  The Debtors shall indemnify and hold harmless the ABL DIP Agent and each other ABL DIP Credit Party, and each of their respective shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, the DIP Facilities or the transactions contemplated thereby or by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these Cases, any plan, or any action or inaction by the Debtors; provided, that such indemnity shall not, as to any indemnified party, be available to the extent that such losses, claims, damages, liabilities or related expenses are determined by a court of competent jurisdiction by final and non-appealable judgment to have resulted directly from the gross negligence or willful misconduct of such indemnified party.  The indemnity includes indemnification for the ABL DIP Agent's exercise of discretionary rights granted under the applicable DIP Facilities.  In all such litigation, or the preparation therefor, each of the ABL DIP Agent and each other ABL DIP Credit Party shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel, subject to the same review and objection procedures as set forth in paragraph 26 of this Interim Order.

28.     Proofs of Claim. None of the ABL DIP Lender Parties or the Prepetition Secured Creditors will be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases based upon the ABL DIP Obligations or the Prepetition Secured Obligations, as applicable, and the provisions of this Interim Order relating to the amount of the ABL DIP Obligations, the DIP Superpriority Claims, the Prepetition ABL Obligations and the Prepetition Term Loan Obligations shall constitute timely filed proofs of claim and/or administrative expense requests in each of the Cases.

29.     Rights of Access and Information. Without limiting the rights of access and information afforded the ABL DIP Lender Parties under the ABL DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the ABL DIP Agent reasonable access to the Debtors' premises and their books and records in accordance with the ABL DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the ABL DIP Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Debtor.

30.     Carve-Out.

(a)     *Carve-Out*. As used in this Interim Order, the "**Carve-Out**" means, collectively, the sum of: (I) all allowed administrative expenses pursuant to 28 U.S.C. § 1930(a)(6) for statutory fees payable to the Office of the United States Trustee, together with the statutory rate of interest, or by final order of the Court, and 28 U.S.C. § 156(c) for fees required to be paid to the Clerk of the Court; (II) all reasonable and documented fees and

expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (III) to the extent allowed at any time, whether by interim order, procedural order, or otherwise all unpaid fees, costs, and expenses (the "**Professional Fees**") incurred by (x) persons or firms retained by the Debtors pursuant to sections 327, 328, or 363 of the Bankruptcy Code and (y) the Monitor and Professionals of the Debtors and the Monitor retained, in each case, in connection with the Canadian Proceedings, to the extent such fees are covered by an "Administrative Charges" set forth in the Interim Order entered by the Canadian Court, however the "Administrative Charges" shall be included in the Carve-Out and not duplicative of the Carve-Out (collectively, the "**Debtor Professionals**") and the Committee, if any, appointed in the Chapter 11 Cases pursuant to section 328 or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "**Professionals**")[11] at any time on or before the day which the ABL DIP Agent delivers a Carve-Out Trigger Notice (in accordance with and as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out Trigger Notice; and (IV) Professional Fees (excluding any success fees, completion fees, or similar compensation) in an aggregate amount not to exceed $7,500,000 (the "**Carve-Out Cap**") incurred after the first business day following delivery by the ABL DIP Agent of the Carve-Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (IV) being the "**Post Carve-Out Trigger Notice Cap**").

(b)     *Payment of the Carve-Out.* Any funding of the Carve-Out pursuant to the terms of this Interim Order or the ABL DIP Loan Documents shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the

---

[11] The Carve-Out incorporates relevant "Administrative Charges" set forth in the Interim Order entered by the Canadian Court, however the "Administrative Charges" shall be included in the Carve-Out and not duplicative of the Carve-Out.

protections granted under this Interim Order, the ABL DIP Loan Documents, the Bankruptcy Code, and applicable law.

(c)     For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the ABL DIP Agent, to the Debtors, their lead restructuring counsel, the U.S. Trustee, counsel to Prepetition Agents and counsel to the Prepetition Required Term Loan Lenders, as applicable, which notice may be delivered on or after the Interim Order Termination Date, stating that the Carve-Out Trigger Notice Cap has been invoked. On the day on which a Carve-Out Trigger Notice is given to the Debtors (the "**Carve-Out Trigger Notice Date**"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Professional Fees. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay unpaid Professional Fees described in clauses (I) through (III) of the definition of Carve-Out set forth above (the "**Pre Carve-Out Trigger Notice Reserve**") prior to any and all other claims. On the Carve-Out Trigger Notice Date, the Carve-Out Trigger Notice shall also constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor (or to borrow under the DIP Loan Documents) to fund a reserve in an amount equal to the Post Carve-Out Trigger Notice Cap. The Debtors shall deposit and hold such amounts in a segregated account in trust to pay such Professional Fees benefiting from the Post Carve-Out Trigger Notice Cap (the "**Post Carve-Out Trigger Notice Reserve**" and, together with the Pre Carve-Out Trigger Notice Reserve, the "**Carve-Out Reserves**") prior to any and all other claims. All funds in the Pre Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (I) through (III) of the definition of Carve-Out set

48

forth above (the "**Pre Carve-Out Amounts**"), but not, for the avoidance of doubt, the Post Carve-Out Trigger Notice Cap, until paid in full, then, to the extent the Pre Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay any outstanding obligations in accordance with their rights and priorities as set forth herein. All funds in the Post Carve-Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (IV) of the definition of Carve-Out set forth above (the "**Post Carve-Out Amounts**"), then, to the extent the Post Carve-Out Trigger Notice Reserve has not been reduced to zero, to pay any outstanding ABL DIP Obligations in accordance with the rights and priorities as set forth herein. Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition Credit Documents, or this Interim Order, if either of the Carve-Out Reserves is not funded in full in the amounts set forth in this paragraph 30, then, any excess funds in one of the Carve-Out Reserves following the payment of the Pre Carve-Out Amounts or the Post Carve-Out Amounts, as applicable, shall first be used to fund the other Carve-Out Reserve, up to the applicable amount set forth in this paragraph 30, prior to making any other payments hereunder. Notwithstanding anything to the contrary in the DIP Loan Documents, the Prepetition Credit Documents, or this Interim Order, following delivery of a Carve-Out Trigger Notice, neither the ABL DIP Agent, the Prepetition Term Loan Agent nor the Prepetition ABL Agent shall sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve-Out Reserves have been fully funded, but the ABL DIP Agent shall have a security interest in any residual interest in the Carve-Out Reserves.

(d)    Further, notwithstanding anything to the contrary in this Interim Order, (i) the failure of the Carve-Out Reserves to satisfy in full the Professional Fees shall not affect the priority of the Carve-Out, and (ii) in no way shall the Budget, the Carve-Out, the Post Carve-Out

49

Trigger Notice Cap, Carve-Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Professional Fees due and payable by the Debtors or the Committee, if any, or as a limitation on the rights of any party to object to the reasonableness of the Professional Fees. For the avoidance of doubt and notwithstanding anything to the contrary herein or in the Prepetition Credit Documents or DIP Loan Documents, the Carve-Out shall be senior to all liens and claims securing the Prepetition Secured Obligations or DIP Obligations, the Adequate Protection Liens, any 507(b) Claims, any claims under section 506(c) of the Bankruptcy Code and any and all other forms of adequate protection, liens, or claims securing the obligations under the Prepetition Credit Documents or DIP Loan Documents. Any payment or reimbursement made prior to the occurrence of the Carve-Out Trigger Notice Date in respect of any Professional Fees shall not reduce the Carve-Out. Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Notice Date in respect of any Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.

(e)     Limitations on the ABL DIP Facility, the DIP Collateral, the Cash Collateral and the Carve-Out. The ABL DIP Facility, the DIP Collateral, the Cash Collateral and the Carve-Out may not be used in connection with or to finance in any way: (a) any action, suit, arbitration, proceeding, application, motion or other litigation of any type (including, without limitation, in connection with the assertion of or joinder in any claim, counterclaim, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration or similar relief) (i) invalidating, setting aside, avoiding or subordinating, in whole or in part, any ABL DIP Obligations, Interim Term Loan DIP Obligations or Prepetition Secured Obligations, (ii) for monetary, injunctive or other affirmative relief against the ABL DIP Lender Parties or the Prepetition Secured Creditors

or their respective collateral, (iii) preventing, hindering or otherwise delaying the exercise by the ABL DIP Lender Parties or the Prepetition Secured Creditors of any rights and remedies under this Interim Order or the Final Order, the ABL DIP Loan Documents, the Prepetition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the ABL DIP Agent upon any of the DIP Collateral or by the Prepetition ABL Agent or the Prepetition Term Loan Agent with respect to its Adequate Protection Liens, (iv) asserting that the value of the Prepetition Collateral is less than the Prepetition Secured Obligations, or (v) pursuing litigation against the ABL DIP Credit Parties or the Prepetition Secured Creditors; (b) objecting to, contesting, or interfering with, in any way, the ABL DIP Lender Parties' or the Prepetition Secured Creditors' enforcement or realization upon any of the DIP Collateral following a Termination Declaration, except as provided for in this Interim Order and consistent with the Priority Waterfall, or seeking to prevent the ABL DIP Agent or the Prepetition Secured Creditors from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (c) using or seeking to use Cash Collateral while the ABL DIP Obligations or the Prepetition Secured Obligations remain outstanding in a manner inconsistent this Interim Order, the Priority Waterfall and the ABL DIP Loan Documents; (d) incurring Indebtedness (as defined in the ABL DIP Credit Agreement) outside the ordinary course of business, except as permitted under the ABL DIP Loan Documents; (e) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the ABL DIP Lender Parties or the Prepetition Secured Creditors; (f) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the ABL DIP Lender Parties or the Prepetition

Secured Creditors; or (g) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the ABL DIP Obligations, the Interim Term Loan DIP Obligations (upon entry of the Final Order), the Prepetition Secured Obligations, the DIP Liens or the Prepetition Senior Liens or any other rights or interests of the ABL DIP Lender Parties or the Prepetition Secured Creditors; provided, that the foregoing limitations shall not encompass any investigation of the Prepetition Secured Obligations and the Prepetition Senior Liens conducted by Professionals retained by the Committee, if any, so long as the costs, fees and expenses incurred by such Professionals do not exceed $25,000 in the aggregate.

(f)     Payment of Compensation. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any Professionals or shall affect the right of the ABL DIP Lender Parties, the Prepetition Secured Creditors or any other party in interest, including the U.S. Trustee, to object to the allowance and payment of such fees and expenses.

31.     Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)     The stipulations, findings, representations and releases contained in this Interim Order with respect to the Prepetition Secured Creditors and the Prepetition Secured Obligations shall be binding upon all parties-in-interest, any trustee appointed in these cases and the Committee, if any, (each, a "**Challenge Party**"), unless and solely to the extent that (i) the Debtors or, subject to clause (b) below, any other Challenge Party initiates an action or adversary proceeding relating to a Challenge (defined below) during the Challenge Period (defined below), and (ii) the Court rules in favor of the Challenge Party in any such timely and properly filed Challenge. For purposes of this paragraph 31: (a) "**Challenge**" means any claim or cause of action against any of the Prepetition Secured Creditors on behalf of the Debtors or the Debtors'

52

creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (ii) the validity, allowability, priority, or amount of any of the Prepetition Secured Obligations (including any fees included therein); (iii) the secured status of any of the Prepetition Secured Obligations; (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from any of the respective Prepetition Credit Documents; or (v) the releases set forth herein and in the DIP Loan Documents; and (b) "**Challenge Period**" means with respect to any party-in-interest (including the Committee and any chapter 7 or 11 trustee appointed in the Cases), the period from the Petition Date until January 16, 2017.

(b)     Upon the expiration of the Challenge Period without the filing of a Challenge (the "**Challenge Period Termination Date**"): (i) any and all such Challenges and objections by any party (including, without limitation, the Committee, if any, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (ii) all findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Secured Creditors' claims, liens, and interests set forth in this Interim Order shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (iii) any and all claims or causes of action against any of the Prepetition Secured Creditors relating in any way to the Prepetition Credit Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other

53

parties in interest in these Cases and any Successor Cases. In the event that no Challenge is filed with respect to the Prepetition ABL Credit Documents, the Prepetition ABL Obligations or the Prepetition ABL Creditors, all amounts held in the Prepetition ABL Escrow shall be released to the Debtors promptly following the expiration of the Challenge Period.

(c)     For the avoidance of doubt, any trustee appointed or elected in these cases, until the expiration of the Challenge Period and thereafter during the duration of any Challenge timely commenced pursuant to this paragraph 31 (whether commenced by such trustee or another party-in-interest on behalf of the Debtors' estates), shall not, solely for purposes of any such Challenge, be bound by the acknowledgements, stipulations, admissions, confirmation and waivers of the Debtors set forth in this Order.

32.     No Third Party Rights. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

33.     Section 506(c) Claims. Subject to the entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time (excluding, for the avoidance of doubt, the Carve-Out) shall be charged against the ABL DIP Lender Parties, the Term Loan DIP Lender Parties or the DIP Collateral or the Prepetition Secured Creditors or the Prepetition Collateral pursuant to Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

34.     No Marshaling/Applications of Proceeds. Subject to the entry of the Final Order, none of the ABL DIP Lender Parties, the Term Loan DIP Lender Parties or the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

35.     Section 552(b).  The ABL DIP Agent and the other ABL DIP Lender Parties and, subject to entry of the Final Order, the Term Loan DIP Agent and the other Term Loan DIP Lender Parties shall be entitled to all of the rights and benefits of Section 552(b) of the Bankruptcy Code.  Subject to the entry of the Final Order, the "equities of the case" exception under Section 552(b) of the Bankruptcy Code shall not apply to the ABL DIP Lender Parties, the Term Loan DIP Secured Parties or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

36.     Joint and Several Liability.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the ABL DIP Facility and the ABL DIP Loan Documents.

37.     No Superior Rights of Reclamation.  Based on the findings and rulings herein concerning the integrated nature of the DIP Facilities and the Prepetition Credit Documents and the relation back of the DIP Liens, in no event shall any alleged right of reclamation or return (whether asserted under Section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

38.     Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the ABL DIP Lender Parties' or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek additional adequate protection), and  (b) any of the rights of the ABL DIP Lender Parties or the Prepetition Secured Creditors under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the

Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans. Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the ABL DIP Lender Parties and the Prepetition Secured Creditors are preserved.

39. No Waiver by Failure to Seek Relief. The failure of the ABL DIP Lender Parties to seek relief or otherwise exercise rights and remedies under this Interim Order, the ABL DIP Loan Documents or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the ABL DIP Lender Parties.

40. Binding Effect of Interim Order. Subject to paragraph 31, immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the ABL DIP Lender Parties, the Term Loan DIP Lender Parties, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Committee, if any, or any other court-appointed committee appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee, other fiduciary or liquidating or creditor trust hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case. Notwithstanding anything contained herein with respect to the obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what are binding on all parties.

41. No Modification of Interim Order. Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions

contained in the relevant DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the ABL DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consent of the ABL DIP Agent (i) any reversal, modification, stay, vacatur or amendment to this Interim Order, or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in Sections 503(b), 507(a), 507(b) or 546 of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, other than the Carve-Out; (b) without the prior written consent of the ABL DIP Agent, any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) without the prior written consent of the ABL DIP Agent, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the ABL DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the ABL DIP Agent.

42. <u>Interim Order Controls</u>. In the event of any inconsistency between the terms and conditions of the ABL DIP Loan Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

43. <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization or liquidation in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases;

(d) appointment of any liquidation or creditor trust in respect of the Debtors or their assets; or (e) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the ABL DIP Lender Parties and the Prepetition Secured Creditors pursuant to this Interim Order and/or the applicable DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been paid in full and all commitments to extend credit under the ABL DIP Facility are terminated. The terms and provisions in this Interim Order concerning the indemnification shall continue in the Cases and in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the ABL DIP Loan Documents and/or the repayment of the ABL DIP Obligations.

44. Final Hearing. The Final Hearing to consider entry of the Final Order and final approval of the ABL DIP Facility is scheduled for ___Nov___ ᐟ○, 2016 at ⎩⎩:ɷ ᵘᵐ. (Eastern Time) before the Honorable Kevin J. Carey, United States Bankruptcy Judge, Courtroom #5, at the United States Bankruptcy Court for the District of Delaware located at 824 Market Street, 5th Floor, Wilmington, Delaware 19801.

45. Notice of Final Hearing. On or before November ⅄, 2016, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy of the Motion and this Interim Order upon: (i) the U.S. Trustee; (ii) holders of the forty (40) largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel for the ABL DIP Agent; (iv) counsel for the Term Loan DIP Agent; (v) counsel for the Prepetition ABL Agent; (vi) counsel for the Prepetition Term Loan Agent; (vii) any party that has asserted or may assert a lien in the Debtors'

assets; (viii) the Debtors' landlords; (ix) all parties who have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002; (x) applicable state taxing authorities; (xi) the United States Internal Revenue Service; (xii) the Monitor; and (xiii) the United States Securities and Exchange Commission. The Debtors may serve this Motion and the Interim Order without the exhibits attached thereto as such exhibits are voluminous and available, free of charge, at https://cases.primeclerk.com/psg. Such notice is deemed good and sufficient and that no further notice need be given.

46. Objection Deadline. Objections, if any, to the relief sought in the Motion shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the clerk of the Court, and personally served upon (a) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Kelley A. Cornish (kcornish@paulweiss.com) and Alice Belisle Eaton (aeaton@paulweiss.com) and Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, Delaware 19801, Attn: Pauline K. Morgan, Esq. (pmorgan@ycst.com) and Joel A. Waite, Esq. (jwaite@ycst.com ), counsel for the Debtors; (b) the Office of the United States Trustee for the District of Delaware; 844 King Street, Room 2207, Wilmington, DE 19801, Attn: Mark S. Kenney (Mark.Kenney@usdoj.gov); (c) counsel to the Committee, if any; (d) Choate, Hall & Stewart LLP, Attn: John F. Ventola, Esq. (jventola@choate.com) and Douglas R. Gooding, Esq. (dgooding@choate.com), and Richards, Layton & Finger, P.A., Attn: Mark D. Collins, Esq. (collins@rlf.com) and John H. Knight, Esq., (knight@rlf.com), attorneys for the ABL DIP Agent and the Prepetition ABL Agent; (e) Kirkland & Ellis LLP, Attn: Christopher Marcus (cmarcus@kirkland.com), attorneys for the Term Loan DIP Agent; (f) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York,

New York 10017, Attn: Hilary Dengel (hilary.dengel@davispolk.com), attorneys for the Prepetition Term Loan Agent; and (g) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, NY 10153, Attn: Matthew S. Barr, Esq. (matt.barr@weil.com) and Gabriel A. Morgan, Esq. (gabriel.morgan@weil.com), attorneys for the Majority Term Lenders; and (h) Goodmans LLP, Bay Adelaide Centre, 333 Bay Street, Suite 3400, Toronto, ON M5H 2S7, Attn: Joe Latham (jlatham@goodman.ca), attorneys for the Majority Term Lenders so that such objections are filed with the Court and received by said parties on or before 4:00 p.m. (Eastern Time) on ___Nov___ 21 , 2016 with respect to entry of the Final Order.

47.     Effect of this Interim Order.  This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

48.     Waiver of Any Applicable Stay.     The Court hereby waives the notice requirements of Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), and/or an order granting relief from the automatic stay under Bankruptcy Rule 4001(a)(3), if applicable.

49.     Retention of Jurisdiction.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

Dated: November  1 , 2016
           Wilmington, Delaware

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE