## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:                                          :          CHAPTER 11
                                                :
OLD BPSUSH INC., *et al.*,[1]                   :
                                                :          Case No. 16-12373 (KJC)
                              Debtors           :          (D.I. 1635)
                                                :

## OPINION[2]

Before the Court is the Liquidation Trustee's First Omnibus Objection to Certain Claims

(Substantive) (D.I. 1635) (the "Claims Objection") and the responses to the Claims Objection

filed by Samuel E. Gasowski, Rocco Covella, and Sandy Sepulveda-Ayers (together, the

"Claimants").[3]  The Claimants filed claims asserting a right to payment based upon the Debtors'

---

[1] The debtors in these chapter 11 cases are Old BPSUSH Inc. (f/k/a BPS US Holdings Inc.), Old BH Inc. (f/k/a Bauer Hockey, Inc.), Old EBS Inc. (f/k/a Easton Baseball/Softball Inc.), Old BHR Inc. (f/k/a Bauer Hockey Retail Inc.), Old BPSU Inc. (f/k/a Bauer Performance Sports Uniforms Inc.), Old PLG Inc. (f/k/a Performance Lacrosse Group Inc.), Old BPSCI Inc. (f/k/a BPS Diamond Sports Inc.), Old PSGI Inc. (f/k/a PSG Innovation Inc.), Old BHR Wind-down Corp. (f/k/a Bauer Hockey Retail Corp.), Old EBS Wind-down Corp. (f/k/a Easton Baseball/Softball Corp.), Old PSGI Wind-down Corp. (f/k/a PSG Innovation Corp.), Old BPSDS Wind-down Corp. (f/k/a BPS Diamond Sports Corp.), Old BPSU Wind-down Corp. (f/k/a Bauer Performance Sports Uniforms Corp.), Old PLG Wind-down Corp. (f/k/a Performance Lacrosse Group Corp.), and Old PSG Wind-down Ltd. (f/k/a Performance Sports Group Ltd and also representing the estates of the Debtors formerly known as KBAU Holdings Canada, Inc., Bauer Hockey Corp. and BPS Canada Intermediate Corp., respectively) (the "Debtors").

[2] This Memorandum constitutes the findings of fact and conclusions of law as required by Fed.R.Bankr.P. 7052. This Court has jurisdiction to decide the Motion pursuant to 28 U.S.C. § 157 and § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

[3] Mark E. Palmer was appointed the liquidation trustee under the Debtors' confirmed chapter 11 plan (the "Liquidation Trustee").  The Claims Objection included the Liquidation Trustee's objections to claim number 203 filed by Samuel E. Gasowski, claim number 483 filed by Rocco Covella, and claim number 620 filed by Sandy Sepulveda-Ayers. Mr. Gasowski filed a response to the objection at D.I. 1670 (the "Gasowski Response"), Mr. Covella filed a response to the objection at D.I. 1671 (the "Covella Response"), and Ms. Sepulveda-Ayers filed a response at D.I. 1672 (the "Ayers Response").  Claim numbers 203, 483 and 620 are referred to jointly herein as the "Claims," and the Gasowski Response, Covella Response and Ayers Response are referred to jointly herein as the "Responses."

Prepetition Retention Program. [4]  The Liquidation Trustee objects to those Claims, asserting that the Claimants waived their rights to receive any payments under the Prepetition Retention Program when the Claimants received a post-petition award under the Debtors' court-approved Key Employee Retention Plan ("KERP").  The Claimants argue that the waivers are unenforceable under applicable California law and for lack of consideration.  For the reasons that follow, the Liquidation Trustee's objections to the Claims will be sustained and the Claims will be disallowed.

FACTS

The key facts of this matter are not disputed.

On October 31, 2016 (the "Petition Date"), the Debtors filed chapter 11 bankruptcy petitions in this Court.  Each of the Debtors also filed for protection from their creditors under Canada's *Companies' Creditors Arrangement Act* ("CCAA") in the Ontario Superior Court of Justice (Commercial List) (the "Canadian Court" and the filing, the "Canadian Proceedings").

On November 10, 2016, the Office of the United States Trustee (the "UST") appointed a committee of unsecured creditors (the "Creditors' Committee") and on November 28, 2016, the UST appointed a committee of equity security holders.  Pursuant to the CCAA, the Canadian Court appointed an independent officer (the "Monitor") in the Canadian Proceedings.

On November 30, 2016, this Court entered an Order (D.I. 233) approving bidding procedures for the sale of the certain of the Debtors' assets.  An auction of those assets was scheduled for January 30, 2017.

---

[4] Prior to the Petition Date, the Debtors implemented a two-year retention program geared towards ensuring that select employees remained with the Debtors until June 2018 (generally, the "Prepetition Retention Program").  The Claimants' specific incentive awards were governed by individual agreements (the "Individual Prepetition Award Agreements").  The Claimants attached copies of their Individual Prepetition Award Agreements to their pleadings, which are not disputed.

On December 19, 2016, this Court entered an order setting February 6, 2017 (the "General Bar Date") as the bar date for filing proofs of claim against the Debtors, and setting May 1, 2017 (the "Government Bar Date") as the bar date for all governmental units to file proofs of claim against the Debtors.

On December 22, 2016, the Debtors filed the "Motion for Order, Pursuant to Sections 363(b) and 503(c) of the Bankruptcy Code, Approving Debtors' (I) Key Employee Incentive Plan and (II) Key Employee Retention Plan" (D.I. 402) (the "KERP Motion"). The KERP Motion noted that shortly after filing the chapter 11 petitions, the Debtors lost three critical employees that were participants in the Debtors' Prepetition Retention Program, as well as five other employees. In the KERP Motion, the Debtors and their advisors asserted that it was in the estates' best interest to convert the Prepetition Retention Program into the Key Employee Retention Plan (the "KERP") and expand its reach to include additional individuals who were deemed critical to the Debtors' ongoing operations and who presented a retention risk.

On January 5, 2017, in the absence of any objection, the Court entered an Order (D.I. 497) approving the KERP Motion. Following the Court's approval of the KERP, the Debtors sent letter agreements (the "KERP Letter Agreements") to eligible employees indicating (i) the amount of their potential KERP award; (ii) the conditions under which it would become payable; and (iii) that any KERP award would be *in lieu of* any bonus that such employee may have been entitled to receive under the Prepetition Retention Program. Claimants Gasowski and Sepulveda-Ayers signed their KERP Letter Agreements on January 24, 2017; Claimant Covella signed his KERP Letter Agreement on February 1, 2017. The KERP Letter Agreements provided as follows:

> As you know, Performance Sports Group, Ltd. ("PSG") is currently engaged in discussions regarding the purchase of substantially all of PSG's assets (the

"Transaction"). We are pleased to inform you that PSG is prepared to offer you a retention bonus under the Key Employee Retention Plan ("KERP") as described below, subject to the following conditions: the successful closing of the Transaction, and your continued employment in good standing until the closing of the Transaction and the payout date (unless earlier terminated without cause).

**KERP Incentive Bonus**
Subject to the conditions referenced above as a part of the Company's KERP, and your ongoing employment with PSG, or its affiliates, you will be eligible to receive a one-time Key Employee Retention Plan Incentive Bonus (the "Bonus") in the amount of [$[5]    ] USD, less applicable withholdings. This Bonus will be paid out as soon as administratively possible following the closing of the Transaction and will be paid in your local currency. You must be employed at the time of the payout in order to receive the payment, unless earlier terminated without cause.

**Under the terms of the KERP approved by the courts, payments received under the KERP will be in lieu of any payments you may have been entitled to receive under previous retention programs offered by the Company prior to commencement of their Chapter 11 and CCAA proceedings.** [Emphasis added].

This letter is not intended as an employment contract or guarantee of continued employment of any kind. Please sign and return a copy of this letter to me and retain a copy for your records.

Thank you for your commitment to the business during the Bankruptcy process and your continued contributions going forward.[6]

The auction was held on January 30, 2017, and on February 6, 2017, this Court entered an Order (D.I. 770) approving the sale of certain of the Debtors' assets pursuant to an Asset Purchase Agreement to Peak Achievement Athletics Inc. (f/k/a 9938982 Canada Inc.) (the "Sale"). The Sale closed on February 27, 2017. Shortly after the Sale closing, the Debtors paid the Claimants' respective KERP bonuses in full.

On December 20, 2017, this Court entered an Order (the "Confirmation Order") confirming the First Amended Joint Chapter 11 Plan of Liquidation of Old BPSUSH Inc. and its

---

[5] Each KERP Letter Agreement had a different amount for each Claimant.
[6] Liquidation Trustee's Reply (D.I. 1702), Ex. C.

Affiliated Debtors (D.I. 1473) (the "Plan").  The Effective Date of the Plan occurred on December 21, 2017.

Pursuant to Section VI.A. of the Plan, after the Effective Date, the Liquidation Trustee is authorized, after consultation with the Monitor, to file objections and to settle, compromise, withdraw or litigate to judgment objections to Claims.   The Liquidation Trustee and its advisors have been reviewing and reconciling the filed proofs of claim with the Debtors' books and records to determine the validity of the asserted claims.

<u>DISCUSSION</u>

The Claimants argue that the claim waivers in the KERP Letter Agreements are not enforceable because (i) the KERP letter agreement is a novation that is not supported by new consideration and, therefore, is invalid; and (ii) the California Labor Code prohibits an employer from requiring an employee to provide a release in return for wages that are due, unless those wages are paid in full.[7]   The Trustee argues in response that (i) the Claimants received valid and sufficient consideration in exchange for the payments under the KERP Letter Agreements; and (ii) even assuming that California law applies to this dispute (which the Trustee does not concede), the Labor Code section cited by the Claimants is not applicable here because the Prepetition Retention Program bonuses were not unconditionally due at the time the KERP Letter Agreements were signed.  The Trustee further argues that the Claims should be disallowed because federal bankruptcy law preempts the contrary state law.

---

[7] The Claimants also argue that the KERP Letter Agreements are unenforceable because the KERP Motion incorrectly understated the amounts of the potential bonus awards offered in the Prepetition Retention Program.  The Debtors admit that, in certain instances, the KERP Motion misstated the amount of the potential Prepetition Retention Program bonuses and apologized for the error.  There is no claim, however, that the KERP recipients were misled by the statements in the KERP Motion.  Therefore, I disagree that the misstatements in the KERP Motion provide a basis for invalidating the KERP Letter Agreements.

(a)    <u>Novation</u>

The Claimants first argue that the KERP was an attempt at a novation of the Prepetition Retention Program. A novation is the substitution by agreement of a new obligation for an existing one with the intent to extinguish the latter.[8] A novation must be supported by consideration or it is unenforceable.[9]

The Claimants argue that the Debtors did not give them any new consideration for the KERP payments. Entitlement to the KERP payments was conditioned upon closing of the asset Sale and the Claimants' continued employment through closing. The Claimants contend that the closing of the asset Sale was a "change in control" referenced in the Prepetition Retention Program and, therefore, they assert that they earned the full amount of the prepetition retention bonuses upon closing. The Claimants also assert that the KERP payments were less than the amounts that would have been due under the Prepetition Retention Program, and did not provide them with any value or new consideration.

The Trustee disagrees and argues that the Claimants received valuable new consideration in exchange for the KERP payments. The Trustee first disputes the Claimants' interpretation of language in the Prepetition Retention Program and claims that the bonuses under those programs were not due upon closing of the asset Sale. However, even assuming that the Claimants'

---

[8] Ca. Civil Code § 1531. Similarly, under New York law, a novation may be established when four elements are present: (i) a valid prior obligation; (ii) the agreement of all parties to a new contract; (iii) the extinguishment of the old obligation; and (iv) a valid new contract supported by consideration. *Meister v. Chase Manhattan Bank, N.A. (In re Stader)*, 90 B.R. 29, 31 (Bankr. D. Conn. 1988) (applying New York law) (citing *Callanan Indus. v. Micheli Contracting*, 124 A.D.2d 960, 508 N.Y.S.2d 711, 712 (3d Dept. 1986)).

[9] Ca. Civil Code § 1532. *Miran v. Convergent Outsourcing, Inc.*, 2017 WL 1410296, *3 (S.D. Cal. Apr. 20, 2017) (quoting *Klepper v. Hoover*, 21 Cal. App. 3d 460, 463, 98 Cal. Rptr. 482 (Cal. Dist. 5 Ct. App. 1971)) ("A novation is subject to the general rules governing contracts . . . and requires an intent to discharge the old contract, a mutual assent, and a consideration."). *See also Stader, supra*, n.8.

reading of the Prepetition Retention Program is correct, the undisputed facts support the conclusion that the Claimants received valid consideration for the KERP payments.

The time between execution of the KERP Letter Agreements by the Claimants (late January or early February 2017) and the Sale closing (February 27, 2017) is relatively short. But the Trustee points out that the Claimants signed their respective KERP Letter Agreements at a time when the Debtors still faced significant challenges to the approval and consummation of the asset Sale, including dozens of formal and informal objections or responses to the Debtors' request for approval of the Sale. And, of course, "deal risk" is inherent in any such transaction, unrelated to any challenges that may be imposed by the overlay of a bankruptcy proceeding.

Therefore, even if the Claimants earned the Prepetition Retention Program bonuses as of closing, the bonuses were prepetition general unsecured claims of questionable value. By replacing the Prepetition Retention Program with the KERP, the Debtors substituted post-petition administrative priority obligations for pre-petition general unsecured claims of unknown value, which, at the time, were far from certain to be paid in full. Additionally, approval of the KERP Motion, execution of the KERP Letter Agreements, and payment of the KERP awards occurred months prior to the negotiation, compromise and global settlement with both Committees of disputes over purchase price allocation that ultimately allowed for payment of general unsecured claims in full. Upon consideration of the facts and circumstances in this case, I conclude that the Claimants received new and valid consideration in exchange for the KERP payments.

(b)    California Labor Code

The parties dispute which state's law applies to this matter. The Individual Prepetition Award Agreements under the Prepetition Retention Program provide that:

> This Agreement shall be construed and interpreted in accordance with the laws
> of the state of New York, without regard to principles of conflicts of law thereof,
> or principles of conflicts of laws of any other jurisdiction which could cause the
> application of the laws of any jurisdiction other than the State of New York.[10]

When choosing which state law governs a matter, a federal court must apply the choice-of-law rules of the forum state.[11] "Under Delaware law, express choice of law provisions in contracts are generally given effect."[12]

However, the Claimants argue that California law applies to matters concerning the payment of wages in California, regardless of choice of law provisions in contracts, because "California courts will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates [the] state's public policy."[13] The Claimants rely upon the California Labor Code for payment of the Prepetition Retention Program bonuses.[14] The California Court of Appeals has determined that the "Labor Code provisions . . . further California's fundamental public policy of requiring California employers to fully and promptly pay all wages due their employees."[15] The California Court of Appeals recognized that "[s]o great is the public policy protecting employees' right to [wages] that the

---

[10] Liquidation Trustee's Reply (D.I. 1702), Ex. B, ¶ 7(h).

[11] *White v. Sunoco, Inc.*, 870 F.3d 257, 263 (3d Cir. 2017) (citing *LeJeune v. Bliss Salem, Inc.*, 85 F.3d 1069, 1071 (3d Cir. 1996)).

[12] *Enzo Life Sciences, Inc. v. Adipogen Corp.*, 82 F.Supp.3d 568, 596 (D. Del. 2015) (quoting *Weiss v. Northwest Broadcasting, Inc.*, 140 F. Supp. 2d 336, 342 (D. Del. 2001)).

[13] *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141, 147, 187 Cal. Rptr. 3d 613, 618 (Cal. Dist. 4 Ct. App. 2015).

[14] Cal. Labor Code §201(a) (West 2018) (which requires an employer who discharges an employee to pay immediately any "wages earned and unpaid at the time of discharge."); Cal. Labor Code § 206.5(a) (which prohibits an employer from requiring an employee to release a claim for "wages due, or to become due . . . unless payment of those wages has been made.")

[15] *Verdugo*, 237 Cal. App. 4th at 156, 187 Cal. Rptr. 3d at 626.

right is 'unwaivable,'"[16] and the court held that employers were prevented from using forum selection and choice of law clauses to circumvent unwaivable statutory rights.[17]

California's "Labor Code's protections are 'designed to ensure that employees receive their full wages at specified intervals while employed, as well as when they are fired or quit' and are applicable not only to hourly employees, but to highly-compensated executives and salespeople."[18] "[B]onuses are considered 'wages' within the meaning of Labor Code section 200."[19]

The Claimants argue that the KERP Letter Agreements violate California Labor Code section 206.5, which provides:

> An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee. Violation of this section by the employer is a misdemeanor.[20]

The Trustee asserts that even if California law applies (which he does not concede), the Claimants still cannot prevail because the Debtors did not owe any "earned wages" to the Claimants under the Prepetition Retention Program as of January and early February 2017, when they signed the KERP Letter Agreements.

---

[16] Id. (quoting Crab Addison, Inc. v. Superior Court, 169 Cal. App. 4th 958, 970, 87 Cal. Rptr. 3d 400 (Cal. Dist. 2 Ct. App. 2008)).

[17] Verdugo, 237 Cal. App. 4th at 157, 187 Ca. Rptr. 3d at 626 (citing America Online, Inc. v. Superior Court, 90 Cal. App. 4th 1, 108 Cal. Rptr. 2d 699 (Cal. Dist. 1 Ct. App. 2001); and Hall v. Superior Court, 150 Cal. App. 3d 411, 197 Cal. Rptr. 757 (Cal. Dist. 4 Ct. App. 1983)). The Verdugo Court held that the employer did not meet its burden of proving that enforcement of a mandatory forum selection clause (requiring actions to be brought in Texas court) would not diminish the employee's unwaivable California statutory rights regarding wages and compensation.

[18] Davis v. Farmers Ins. Exchange, 245 Cal. App. 4th 1302, 1331, 200 Cal. Rptr. 3d 315, 339 (Cal. Dist. 2 Ct. App. 2016) (quoting On-Line Power, Inc. v. Mazur, 149 Cal. App. 4th 1079, 1085, 57 Cal. Rptr. 3d 698 (Cal. Dist. 2 Ct. App. 2007)).

[19] Neisendorf v. Levi Strauss & Co., 143 Cal. App. 4th 509, 522, 49 Cal. Rptr. 3d 216, 225 (Cal. Dist. 1 Ct. App. 2006) (citations omitted). See also Davis, 245 Cal. App. 4th at 1331 n. 20.

[20] Cal. Labor Code § 206.5(a).

The Prepetition Retention Program provided the Claimants with a cash incentive award as long as the employees remained with the company for two years. For all three Claimants, their bonus awards would not "vest" or become due until June 1, 2018. However, the Claimants contend that their bonus awards became due as of the Sale date, due to a "change of control" provision in the Individual Prepetition Award Agreements.[21] Therefore, the Claimants allege, the KERP Letter Agreements violated the California Labor Code by requiring the Claimants to release their rights to payment of larger bonus awards that were due to them under the Prepetition Retention Program as of the Sale date in return for the smaller KERP payments.

The Trustee contends that the bonus awards were *not* due on the Sale date because the change of control provision in the Prepetition Retention Program did not provide for the automatic vesting of the bonus awards. Instead, the full language of the provision governing the effect of a change of control provides that, if an employee is terminated on or within 12 months of the occurrence of a change in control, the Company's compensation committee *may provide* for an award to vest, "provided, that in the event that the vesting . . . of any Award would otherwise be subject to the achievement of performance conditions, the portion of such Award that shall become fully vested and immediately exercisable shall be based on the assumed achievement of target performance as determined by the Committee."[22] Rather than an automatic vesting on the Sale date, the Trustee argues that the applicable agreements provided

---

[21] The Individual Prepetition Award Agreements provided that "if, prior to the end of the Restricted Period [*i.e.,* the period between signing the Individual Award Agreement and the Vesting Date], the [Claimant's] employment is terminated by the Company or an Affiliate without Cause (and other than due to death or Disability) on or within 12 months following a Change in Control, Section 13 of the Plan shall apply to the Award." The "Plan" refers to the Performance Sports Group Ltd. Omnibus Equity Incentive Plan (the "PSG Omnibus Plan"). *See* Individual Award Agreements, ¶ 1(b). The definition of "change of control" in the PSG Omnibus Plan includes (generally) a sale of substantially all of the Company's assets as part of a reorganization. *See* PSG Omnibus Plan, ¶ 3(h)(iv). A copy of the PSG Omnibus Plan is attached as Exhibit B to the Response of Samuel E. Gasowski, D.I. 1670.

[22] Plan, ¶ 13(a).

the Debtors' compensation committee with discretion to accelerate the vesting period and/or waive certain conditions with respect to any prepetition retention bonus. Moreover, the Trustee argues that it was not a "foregone conclusion" that the Sale would take place when the Claimants signed the KERP Letter Agreements approximately one month before the Sale closed. In fact, the Trustee asserts that the point of the KERP was to keep certain key employees from leaving prior to the Sale closing. For all of these reasons, the Trustee argues that the Claimants' signing of the KERP Letter Agreements could not violate California Labor Code section 206.5 because the bonuses were not due at that time, and, further, the parties did not know if the Sale would close, thereby possibly allowing the Debtors discretion to allow an award.

My review of the undisputed facts and the relevant documents here confirms that the Trustee's arguments are sound. Even assuming that California law applies, the KERP Letter Agreements did not violate the California Labor Code. The statutes prohibit "an employer's unilateral act to cause a forfeiture of wages, [and] are manifestly applicable when wages have been promised as part of the compensation for employment *and all conditions agreed to in advance for earning those wages have been satisfied.*"[23] Here, the conditions required for vesting of the prepetition retention bonuses had not occurred at the time the Claimants signed the KERP Letter Agreements.

(c)    Preemption

The Trustee also argues that if the California Labor Code conflicts with the Order approving the KERP Motion, then principles of federal conflict preemption require that the state laws yield. I agree with the Trustee.

---

[23] *Neisendorf,* 143 Cal. App. 4th at 522 (emphasis added). *See also Chindarah v. Pick Up Stix, Inc.,* 171 Cal. App. 4th 796, 802 , 90 Cal. Rptr. 3d 175, 180 (Cal. Ct. App. 2009) ("[S]ection 206.5 prohibited a release of wages due unless paid in full. '[W]ages are not 'due' if there is a good faith dispute as to whether they are owed.'" (citations omitted)).

"A fundamental principle of the Constitution is that Congress has the power to preempt state law."[24] "Courts recognize three categories of federal preemption: (1) express preemption, where Congress has expressly preempted local law; (2) field preemption, 'where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law;' and (3) conflict preemption, where local law conflicts with federal law such that it is impossible for a party to comply with both or the local law is an obstacle to the achievement of federal objectives."[25] Conflict preemption applies here.

The *Old Carco* case is instructive on this issue. In that case, the District Court for the Southern District of New York examined the conflict between state laws that were enacted to prohibit unfair practices between automobile manufacturers and car dealership franchisees (the "State Franchise Laws"), and Bankruptcy Code §365, along with the Bankruptcy Court's Order and Opinion authorizing the debtors' rejection of executory contracts and unexpired leases with certain franchisees (the "Rejection Order"). The *Old Carco* Court determined that the State Franchise Laws were contrary to the Rejection Order, making full enforcement of the Rejection Order near impossible, and superimposing state remedies on activities managed in the bankruptcy process.[26] Accordingly, the *Old Carco* Court held that the federal Bankruptcy Code, as enforced by orders of the Bankruptcy Court, preempted the State Franchise Laws.[27]

---

[24] *In re Old Carco LLC*, 442 B.R. 196, 206 (S.D.N.Y. 2010).
[25] *Old Carco*, 442 B.R. at 206 (quoting *New York SMSA Ltd. P'ship v. Town of Clarkstown*, 612 F.3d 97, 104 (2d Cir. 2010)). The Supreme Court has recognized implied conflict preemption when it is "impossible for a private party to comply with both state and federal requirements" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 1487, 131 L.Ed.2d 385 (1995) (quoting *English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 2274-75, 110 L.Ed.2d 65 (1990) and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941)).
[26] *Old Carco*, 442 B.R. at 211.
[27] *Old Carco*, 442 B.R. at 213.

Similarly, in this matter, federal Bankruptcy law, enforced by the Order approving the KERP Motion, preempts application of the California Labor Code. The Debtors sought and obtained approval of the KERP Motion pursuant to Bankruptcy Code sections 363(b) and 503(c). The Debtors maintained that replacing the Prepetition Retention Program with the KERP was necessary to ensure a stable and efficient sale process, which was in the best interests of the estates and all stakeholders. The process was consistent with and furthered familiar federal bankruptcy policies under the Bankruptcy Code. The Court Order approving the KERP Motion authorized entry into the KERP Letter Agreements. Those letter agreements, which included a waiver of potential prepetition bonus claims in return for administrative claims, are valid and enforceable, notwithstanding contrary state law.

For the foregoing reasons, I will sustain the Liquidation Trustee's objections to claim number 203 filed by Samuel E. Gasowski, claim number 483 filed by Rocco Covella, and claim number 620 filed by Sandy Sepulveda-Ayers. An appropriate order follows.

BY THE COURT:

KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Dated: June 1, 2018